## No. 21415.

### IRVING ZELINGER *v.* RUDOLPH D. PLISEK AND LILLIAN L. PLISEK
(426 P.2d 957)

Decided May 8, 1967.

RONALD I. ZALL, JON M. ZALL, for plaintiff in error.

C. HAMILTON EVANS, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THE plaintiff in error, hereinafter referred to as the landlord, filed a complaint in the lower court seeking cancellation of a lease and damages against the defendants in error, who will herein be referred to singularly as lessee.

The landlord alleges the lessee made alterations or changes in or about the leased premises without first obtaining his written consent as required in the lease and that these alterations and changes damaged his property. The lessee's answer denied any damage to the property and also placed in issue the question of whether the certain admitted changes and alterations were of such a nature as to require the written consent of the landlord. The issues were tried to a jury which found for lessee.

The court entered its judgment for the lessee and dismissed the landlord's complaint.

By this writ of error, the landlord seeks reversal on the grounds that the trial court erred in not directing a verdict in favor of the landlord; and in not declaring, as an equitable remedy that the lease had been breached and ordering its cancellation. Also, the landlord challenges certain instructions to the jury, and the verdict as being contrary to the law and evidence. These latter assignments of error are without merit in view of our ruling and disposition on the issues first mentioned in this paragraph.

A brief background of the transactions between the landlord and the lessee and a description of the changes and alterations are required for a fuller understanding of the basis of this controversy.

In April 1962, the landlord sold to the lessee a self-service laundry and shirt laundry including equipment, supplies and good will for the sum of $14,000. At the same time, the landlord who owned the building and had himself conducted this business previously, leased the premises to the lessee for a term of five years at an agreed rental of $300 per month. Among other things, the written lease provided as follows:

" . . . nor make any alterations or change, upon, or about said premises without first obtaining written consent therefore."

In November 1962, the landlord and the lessee met at the leased premises for the purpose of discussing an alteration which involved cutting five holes in the ceiling to vent new commercial dryers which the lessee was having installed. The landlord indicated that such an alteration would not be permitted unless the lessee posted a bond conditioned upon the lessee putting the property in its original condition when the lease expired. A bond was not posted and the landlord did not give his written consent for this alteration. Shortly thereafter, the lessee removed an air blower from an existing opening on the

roof and replaced it with a metal cap covering five vent ducts, which went through the existing opening. He did not cut five holes in the ceiling and roof as first contemplated. The lessee also constructed a partition on the premises, installed water, steam and gas lines to new equipment, installed 220 volt, double phase and three phase wiring and the necessary electrical boxes to accommodate this wiring, and removed certain cabinet doors and shelving.

When the landlord discovered that the above installations and changes had been made, he served notice of termination of the lease on the lessee because, as he claimed, the lessee had breached the lease by making these changes and alterations without first obtaining written consent. The lessee refused to terminate and the action in the lower court thereafter ensued.

The crux of this dispute centers about the meaning and purport of the words "alteration" and "change" and the construction to be placed upon these words in connection with the lessee's obligation to secure the Landlord's consent. See 32 Am. Jur. *Landlord and Tenant* § 208, wherein we find the following apt quotation:

"If, as is often the case, the lease contains an express provision regarding alterations by the tenant in buildings on the demised premises, such provisions will control the rights of the parties in this respect, and the question becomes one of construction as to whether the changes made or contemplated by the tenant are within the meaning of the covenant."

We have been unable to find any Colorado cases on this matter of interpretation and the construction to be placed on the words "alteration" and "change." However, we note that cases from other jurisdictions in defining these terms as used in a lease make use of the modifier "substantial" to define their scope and meaning within the context of a lease. In *Ten-Six Olive, Inc. v. Curby,* 208 F.2d 117, the word "substantial" was utilized

in making a determination of the kind of alteration contemplated by the lease.

*City of LeMars v. Fisch,* 251 Iowa, 149, 100 N.W. 2d 14, used the modifier "substantial" with the word "change" to define alteration and further defined alteration as used in a lease as follows:

" 'Alteration; . . . means variation, changing, making different, a change of one thing from one form or state to another: a change or substitution in a substantial particular of one part of a building; an installation that . . . changes its structural quality. . . .' "

We believe the foregoing cases set forth reasonable and valid guidelines for use in placing a proper construction on the provision of the lease we are concerned with in this case. We therefore hold that the terms "alteration" and "change" are construed to mean any alteration or change which substitutes or varies one thing from one form or state to another; which changes or substitutes in a substantial particular any part of a building; which materially and substantially changes the basic structure; or which varies the structural quality. We also hold that the changes made here were not of such a character as to require us to say as a matter of law that they were substantial and material.

In an action to cancel the lease and for damages as herein alleged, the court is acting both as a court of equity and a court of law. The decision as to cancellation of a lease is for the court and not the jury. The question of damages is a jury question. However, the court may in its discretion submit to the jury for an advisory verdict the issue of whether the grounds for cancellation of a lease are sufficient. In *Moore v. Burritt,* 106 Colo. 413, 105 P.2d 1084, this court stated:

" . . . the admitted practice in this state is that the calling of a jury in an equity case is discretionary with the court and its verdict is only advisory. Central Life Society v. Mulford, 45 Colo. 240, 100 Pac. 423."

In the case at bar, the court did submit to the jury the

issue as to whether or not the changes and alterations by the lessee were of such a nature as to require the landlord's prior consent; and the jury found this issue in favor of the defendant as well as the issue pertaining to damages. The court by entering judgment for the lessee based upon the jury's verdict did in effect adopt the jury's advisory verdict. We hold that the jury's verdict and the court's judgment thereon were in accordance with the law as herein defined and the evidence.

Judgment affirmed.

MR. JUSTICE SUTTON, MR. JUSTICE PRINGLE and MR. JUSTICE KELLEY concur.