A. H. FOX and Edith Fox, Appellants
(Plaintiffs below),

v.

Walter H. MINER, Arthur H. Wacker, and
Edward E. Nation, Appellees
(Defendants below).

No. 3807.

Supreme Court of Wyoming.

April 10, 1970.

William A. Riner, Cheyenne, for appellants.

Kline, Tilker & Lynch and James A. Tilker, Cheyenne, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiffs, the owners of Lots 9 and 10, Block 33, Mountview Park Addition, City of Cheyenne, since 1963, brought a declaratory judgment class action, seeking to void and make of no effect the "Declaration of Protective Covenants," which had been filed of record in the office of the county clerk and recorder of Laramie County in 1946, shortly after the platting and dedication of the addition to which the covenants applied and of which plaintiffs' lots are two of some three hundred and nineteen

lots restricted to residences.[1] Basis for the claimed relief was that the covenant restricted plaintiffs' lots to single-family residences; that the City of Cheyenne in 1946 established zoning for Mountview Park Addition and in a 1968 ordinance had adopted a different zoning regulation by which plaintiffs' lots were changed from "Residence A" zone to "Business D" zone; that presently the area to the north, south, and west of the said Lots 9 and 10 is used for business and has developed for such purposes so as to inhibit the use of Lots 9 and 10 for residences; that plaintiffs have never had an inquiry or offer for said lots for residential purposes but have had numerous inquiries for development and improvement of them for business; and that the value of the lots for business would be some $50,000 whereas for residences it would not exceed $7,500, and further that many violations of the covenant have been permitted and countenanced by owners of the lots in Mountview Park Addition.

Defendants answered and in addition to urging that the complaint did not state a claim admitted the respective ownership of the lots to which the complaint referred, the establishment of the addition, the existence of the protective covenant, and the City's zoning arrangements, alleging that the recent changes in zoning in Block 33 were irrelevant to the covenant, which presented an independent issue. Defendants also counterclaimed, asking an injunction to prevent plaintiffs' violation of the covenant.

Trial resulted in a judgment finding that the real property, which is the subject of the action, Lots 9 and 10, Block 33, Mountview Park Addition, has been and still is subject to the protective covenants and that there has been no change in the neighborhood which would nullify such covenants and accordingly denied and dismissed the complaint, enjoining plaintiffs from using the lots for business or for other purposes than residences.

Plaintiffs have appealed, urging that the trial court completely ignored the undisputed evidentiary facts, arguing specifically that (1) the finding of the trial court of no change in the nature of the neighborhood is contrary to the undisputed evidence; (2) the changes which may be considered in determining a change of the character of the neighborhood include those in the area outside the Mountview Park Addition; and (3) the changes in the nature of the neighborhood have been proved without dispute so that the protective covenants are no longer properly applicable to the lots.

In their effort to support the charged errors, plaintiffs point to evidence, oral, documentary, and photographic, showing that in 1946 at the time of platting and dedicating the Mountview Park Addition the land so platted as well as that in all directions from it was undeveloped and over the years from then to the present various businesses have moved out along East Lincolnway, the street immediately south of the lots in question, with business zoning therein being permitted by the City until now there are businesses to the west, south across the street, and on further east, and substantial highway development and realignment to the south and east. Some attempt is also made to show that in such interim there has been in Mountview Park Addition itself a departure from the one-family dwelling requirement of the covenant, but this essayed showing is feeble, disclosing at most a beauty shop in an apartment building, the construction of a church having an accompanying parking area on lots north of those in question, and the approval by the board of adjustment of a nonconforming use unobjected to by residents, including activity for a time of a photographer in his home. Evidence of a trend toward nonconformity in the Mountview Park Addition itself was so slight that counsel mentions the subject only peripherally with no apparent effort to rely

1. These lots were for the most part restricted to single-family residences although provision was made in certain blocks for multiple dwellings for not more than four families.

thereon, and we consider that the trial court would have been fully warranted in viewing such evidence as wholly insubstantial.

The facts before the court then as either actually or tacitly conceded by the litigants are:

In 1946 those platting and dedicating the Mountview Park Addition, which was then in and surrounded by undeveloped land, adopted a comprehensive plan providing for residences of different types, service and business areas, one of the latter being the half-block along the East Lincolnway across the street and immediately west of the lots here litigated. Since 1946 business in surrounding subdivisions to the west and south has with the City's consent and approval developed but there has been no real change of neighborhood in Mountview Park Addition.

The question thus presented is whether under such circumstances there has been a showing by plaintiffs, which would have under existing law required the trial court to nullify the restrictive covenants—another way, perhaps, of stating plaintiffs' argument that the trial court completely ignored the undisputed evidentiary facts presented.

### Effect of Rezoning

 Plaintiffs comment that although the point is not a matter within the appeal the 1968 rezoning of Lots 9 and 10 for business purposes was relevant and the trial court properly admitted evidence thereof over defendants' objections. To substantiate this statement they quote from Brideau v. Grissom, 369 Mich. 661, 120 N. W.2d 829, 832:

"The change in the zoning ordinance cannot operate to destroy the obligations

involved in the restrictions * * *. Such change is only a factor to be considered in determining whether a change of circumstances has occurred that an equity court will not enforce the restrictions. * * * "

They also rely upon Wolff v. Fallon, 44 Cal.2d 695, 284 P.2d 802; and Hirsch v. Hancock, 173 Cal.App.2d 745, 343 P.2d 959. We think this philosophy should not go unchallenged since it relates in a measure to the basis of plaintiffs' position. While an examination of the mentioned cases shows none of the three sufficiently analogous to have a bearing on the present litigation, each indicates that rezoning after establishment of the restriction may be a factor for consideration in a suit to void the covenant if such rezoning as a matter of fact created a change of conditions so fundamental or radical as to defeat the original purpose of the covenants. However, it is well settled that zoning ordinances cannot override, annul, abrogate, or relieve land from building restrictions or covenants placed thereon. 2 Yokley, Zoning Law and Practice, p. 453 (1965). We think the trial court here was most generous in admitting evidence which related to the 1968 rezoning of the lots for business since shortly after plaintiffs purchased them in 1963 for speculation, at a figure which they state as many times less than the value of the lots for business, they twice made unsuccessful efforts to have the land rezoned for business by the City. Shortly before this action they made a third attempt by indicating to the city authorities that they desired the rezoning in order that the legal status of the lots might be determined by the court.[2] Under such

2. In evidence was a copy of the minutes of the meeting at which the ordinance was adopted, reading in part:
 "The Council informed Mr. and Mrs. Fox that it was their intention to clear this matter for once and for all by this action and not have it return periodically to the Council as it has been done in the past. They stated it was their intention to clear any obstacle preventing Mr. Fox from taking court action with respect to the protective covenants and that they would not issue a building permit for construction on the premises until Mr. Fox had taken this action; that if he did not take such action within a reasonable time, they

circumstances the rezoning could not by any liberality of interpretation be said to have effected a change so as to defeat the original purpose of the covenant.

### Change in Neighborhood

As we have noted earlier, plaintiffs do not seriously contend there has been any substantial violation of the covenants within the neighborhood but rely entirely on the change—in the establishment of new businesses as well as progressively increased traffic—which has taken place on East Lincolnway to the west of Lots 9 and 10 and across the street to the rear of the southernmost lots which by provision of the covenants fronted north on Forest Drive. As a background for any discussion of the subject, it must be observed that there has been no change as such in that adjacent area but rather a continuous development of the business district, which existed in 1946 along East Lincolnway some blocks west and has since extended eastward past the lots in issue. The testimony shows that plaintiffs were the owners of the Firebird Motel some eight blocks west on that street, having purchased it in 1946, and anticipated the growth of business along the highway to the east. In a somewhat similar situation the Utah court, upholding a covenant, said:

"It has been held that before a change of character in the neighborhood will vitiate a covenant in a deed it must be so great as clearly to neutralize the benefits of the restriction to a point of defeating the object and purpose of the restrictive covenant, or in other words the change required to afford relief is where the change is such as to render the covenant valueless. If the change in neighborhood makes the restriction valueless so its object and purpose cannot be carried out, then it should not be enforced, but in the instant case the restrictive clause was imposed because of the change already in process and as contemplated by

the parties in 1956. Therefore the change in the commercial growth of the area made the object and purpose of the restrictive covenant more valuable to the defendants which destroys the force of plaintiff's argument and authorities. \* \* \*" Metropolitan Investment Company v. Sine, 14 Utah 2d 36, 376 P.2d 940, 943–944.

However, even if we could assume arguendo that the extension of the business in this case was a change of neighborhood in the area where such businesses are conducted rather than development, no authorites are presented as holding that the encroachment of business on one side of a relatively large residential subdivision protected by a restrictive covenant brings about such a substantial change that the original purpose of the covenant can no longer be accomplished. To the contrary is another section of the same encyclopedic reference cited by plaintiffs:

"Generally speaking, in determining whether there has been such a change of conditions as to warrant a refusal to enforce, or a cancellation of, restrictions, the court gives greater weight to the changes occurring within the restricted area than to those occurring without the area. Changed conditions outside the restricted area must not be permitted to terminate the restrictions where this would cause property owners within the restricted area to suffer damage. \* \* \*" 20 Am.Jur.2d Covenants § 284.

Courts of neighboring states have spoken on the subject. In Hogue v. Dreeszen, 161 Neb. 268, 73 N.W.2d 159, 163, it was said that the change in certain sections of property adjoining the bordering street did not affect the residential district covered by covenants. The holding in Chuba v. Glasgow, 61 N.M. 302, 299 P.2d 774, 775, was even broader:

"\* \* \* The area to the north, east, and south is unrestricted and businesses

would entertain application by any resident of the area to again rezone the lots to Residence 'A.' The Council

directed that findings of fact and conclusions of law on this matter be appended to these minutes as an exhibit."

of various kinds have been established thereon; but these changes, outside the restricted area, do not defeat the purposes of the restrictions. \* \* \*"

Similarly courts have frequently declined to nullify restrictive covenants on residential property because of increase of traffic and attendant commotion on a thoroughfare running alongside the protected area. Finley v. Batsel, 67 N.M. 125, 353 P.2d 350, 353; Wahrendorff v. Moore, Fla., 93 So.2d 720, 723; Weinstein v. Swartz, 3 N. J. 80, 68 A.2d 865, 869.

### Standing in Equity

■■ It is elementary that good faith and justified relief from hardship constitute the essence of equity which should be accorded in the conscience of the court. Aside from the other aspects of the case which we have discussed, we observe no showing of plaintiffs by pleading or proof that would warrant an extension to them of relief in equity. By their own allegations and evidence, being fully aware of the covenants, they bought the property in issue as a speculation for a figure far less than its value for business purposes. They have failed to present any factor which would warrant a court of equity in granting relief. Although defendants' second defense that the complaint failed to state a claim might well have been utilized by the trial court as basis for denying plaintiffs the requested relief, the judgment as issued was equally proper.

Affirmed.