SEON P. BONAN & others *vs.* SARNI ORIGINAL DRY CLEANERS, INC.

Suffolk.    March 3, 1971. — April 7, 1971.

Present: TAURO, C.J., SPALDING, SPIEGEL, REARDON, & BRAUCHER, JJ.

*Landlord and Tenant,* Covenant against noise, Alterations, Laundry and dry cleaning plant. *Words,* "Objectionable noise."

In a suit in equity by lessors to restrain the defendant lessee from operating its dry cleaning and laundry plant and store in an offensive and noisy manner, where it appeared that the defendant was obligated by the lease to maintain on the demised premises "at all times . . . sufficient, modern and efficient equipment and fixtures," and not to "permit any objectionable noise" to emanate therefrom, warranted findings by the judge, including findings that the "operation of a laundry and dry-cleaning business with modern, efficient equipment and fixtures . . . cannot be conducted without some sound or noise being transmitted by the building" in which the defendant had its premises, and that the "level of sound caused by . . . [the defendant's] operations as presently conducted" did not exceed that of an average careful operation using such equipment and fixtures in a building constructed as was such building, justified a conclusion by the judge that the sound emanating therefrom did not constitute a violation of the lease. [219–220]

Moving a shirt pressing machine to the front of a store near the front window of premises leased for a dry cleaning and laundry plant and store did not require the tenant to first obtain the written consent of the landlord within a provision of the lease requiring such consent before the tenant could "make any alterations . . . in, to and upon the demised premises." [220–221]

BILL IN EQUITY filed in the Superior Court on April 1, 1969.

The suit was heard by *Roy,* J.

*Jerome L. Rappaport* for the plaintiffs.

*Robert F. Sylvia* for the defendant.

SPALDING, J.  The plaintiffs seek by this bill in equity to restrain the defendant from operating its dry cleaning plant in an offensive and noisy manner.  A decree was entered dismissing the bill and granting to the plaintiffs the right, at their own expense, to make certain modifications, subject to stated terms and conditions, on the defendant's merchandise conveyor.  The plaintiffs appealed.  The judge made careful and comprehensive findings of fact.  The evidence is reported.

Findings of the judge here pertinent include the following. The plaintiffs, who are the partners of a limited partnership called Charles River Park "B" Company (Park), are the owners and developers of a commercial development called Charles River Plaza Shopping Center on Cambridge Street, Boston.  The defendant (Sarni) is a tenant of Park under a written lease and conducts a store and dry cleaning plant on the ground floor of the shopping center, a two-story building.  Ventilation, heating and air conditioning equipment for the building are located on the roof.  There is also on the roof an exhaust fan which another tenant had installed.  Under section 10 of the lease Sarni is required to use and occupy the premises as a dry cleaning and laundry plant with a retail store providing dry cleaning and laundry services.  Section 10 further provided that Sarni "shall at all times maintain on the . . . premises sufficient, modern and efficient equipment and fixtures."  Section 11 of the lease provided that Sarni shall not "permit any objectionable noise . . . to eminate [*sic*] from the demised premises." One of Park's tenants, American Institute of Banking (American) which occupies premises on the second floor, complained to Park of noise and vibration and this was brought to the attention of Sarni.  Thereafter, Sarni purchased and installed certain new equipment designed to eliminate noise and vibration.  At the time of the trial there was "no air-borne sound audible in American's premises."  There was, however, "perceptible sound transmitted or created by tactile vibration — sound conveyed by the structure itself from one point to another."  The

judge, in accordance with the testimony of acoustical experts, found that "the sound level in American's premises is greater than is desirable and would be objectionable to the average person."

The construction of the building, the judge found, was especially susceptible to the transmission of sound by vibration. He concluded that "the cause of the present undesirable sound level is to be found in the construction of the building, the operation of the heating and air conditioning equipment, the exhaust fan, and Sarni's 'finished merchandise' conveyor," but he was "unable to determine the exact contribution of each." When Sarni's "finished merchandise" conveyor was in operation a person in American's office would be conscious of it.[1] The "operation of a laundry and dry-cleaning business with modern, efficient equipment and fixtures as required in the lease and as contemplated by Park and Sarni cannot be conducted without some sound or noise being transmitted by the building into the premises of American." The "level of sound caused by Sarni's operations as presently conducted does not exceed that of an average careful operation using modern, efficient equipment and fixtures in a building constructed as the one in this case."

On the basis of the foregoing findings, the judge ruled that the sound presently emanating from Sarni's premises did not constitute a violation of the lease. The plaintiffs contend that the judge's conclusion, that the operation of a dry cleaning plant cannot be carried on without some noise, even, as here, with the equipment called for in section 10 of the lease, fails to take into consideration section 11 of the lease which requires that Sarni shall not permit any objectionable noise to emanate from its premises. In other words, it is said, the judge's ruling gives section 10 a preference over section 11. We do not agree. Neither clause can be considered in isolation; both must be read together. We

---

[1] "When the 'finished merchandise' conveyor is started in order to locate and deliver merchandise to a customer, there is an audible click. Also audible is its traveling sound."

think that is what the judge did. In determining the meaning of the words "objectionable noise" he had to consider not only Sarni's obligation to prevent such noise but also Sarni's right under the lease to run a laundry and dry cleaning plant which, he found, "cannot be noiseless." *Ryan* v. *Boston Housing Authy.* 322 Mass. 299, 302. Moreover, the judge made no finding that the noise emanating from Sarni's store was objectionable. He found only that the sound by vibration emanating from Sarni's and the sounds emanating from other sources in the building were objectionable in American's premises, but he was unable to determine the exact contribution of each sound disturbance. We see no reason to disturb the judge's conclusion on this aspect of the case.

The judge also ruled that the lease did not "require Sarni to maintain a sales area in any particular part of the demised premises." An examination of the lease, as amended by the parties, convinces us that this ruling was right. The plaintiffs, however, urge that in another respect Sarni violated the lease. Pertinent findings touching this issue were as follows. "During the noise controversy between Park and Sarni, Sarni moved a shirt pressing machine to the front of the store near the front window of the . . . demised premises. . . . The machine and its operators are almost completely concealed from the view of passersby by a tasteful arrangement of either real or artificial greenery in the front window. The presence of the machine in its location is not distasteful or objectionable to customers who enter Sarni's store." There was a clause in the lease that the "Tenant shall not make any alterations, additions, replacements or improvements in, to and upon the demised premises without first obtaining the written consent of Landlord in each instance." No consent with respect to moving the shirt pressing machine was obtained. The plaintiffs contend that this amounted to an unauthorized alteration. The judge rightly rejected this contention. See *Zelinger* v. *Plisek*, 162 Colo. 490.

We have examined the evidence and are of opinion that

the findings, subsidiary and ultimate, of the judge were not plainly wrong and that the rulings based on those findings reveal no error of law.

The bill should not have been dismissed, for some relief was granted to the plaintiffs. The decree should be modified in this respect and, as so modified, is affirmed, with costs of appeal.

*So ordered.*