**James G. ANDERSON, Jr., Appellant (Defendant),**

v.

**Timothy J. BOMMER, Appellee (Plaintiff).**

**No. 95–310.**

Supreme Court of Wyoming.

Nov. 22, 1996.

Peter F. Moyer, Jackson, for Appellant.

R. Michael Mullikin of Mullikin, Larson & Swift, LLC, Jackson, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

LEHMAN, Justice.

Appellee Timothy Bommer sought to enjoin appellant James Anderson, Jr. from violating a restrictive covenant in the construction and use of a home located in Jackson. Pursuant to a motion for summary judgment hearing, the district court held that Bommer had standing to bring the action but denied summary judgment as to whether Anderson had violated the restrictive covenant. That issue was resolved by a trial without jury wherein the district court ruled that Anderson had violated the restrictive covenant and enjoined Anderson from further violation. Anderson appeals both rulings.

We affirm.

## ISSUES

We are presented with the following issues for review:

I. Whether Bommer had standing to sue for injunctive relief.

II. Whether Anderson violated the "single family residence" restriction of the restrictive covenants of the subdivision.

## FACTS

Anderson and Bommer own adjacent lots located in the Sage Subdivision (Subdivision) in the town of Jackson. The Subdivision was created by way of a plat recorded in 1964, which is subject to a "Declaration of Covenants and Restrictions." Bommer purchased lot 34 in 1972, and Anderson acquired lot 33 in February of 1992. Both parties were aware of the restrictive covenants prior to their purchases.

During construction of his home, Anderson showed Bommer the construction plans. Those plans provided for an integrated single-family dwelling as required by the restrictive covenants. During construction, however, Anderson changed the design to include two separate living units in addition to the main living area of the home. Anderson accomplished this by eliminating a door to what was called the "family suite"

* Chief Justice at time of oral argument.

and finishing a separate living area immediately below, which was shown on the original construction plans as an unfinished basement. Each living unit is accessed solely by separate outside doors, and each consists of a bedroom, bathroom, closet, linen closet and furnishings. In addition, the "family suite" contains a wet bar.

Since 1993, Anderson has periodically resided in the area originally designated on the plans as the "family suite," which he describes as a "motel room," while leasing the main living unit to tenants. In 1995, Anderson's son and a friend stayed in the basement living unit. Anderson is not related to the tenants, and the portion of the home occupied by the tenants is inaccessible to Anderson. Likewise, the tenants have access only to their separate living unit.

## DISCUSSION

Inasmuch as the facts are not in dispute and the issues present questions of law, this court conducts a *de novo* review of the district court's conclusions of law. *Samuel v. Zwerin,* 868 P.2d 265, 266 (Wyo.1994). In this regard, we treat restrictive covenants as contractual in nature, and they are to be interpreted in accordance with the principles of contract law. *McHuron v. Grand Teton Lodge Co.,* 899 P.2d 38, 40 (Wyo.1995); *Kindler v. Anderson,* 433 P.2d 268, 270–71 (Wyo. 1967). We seek to determine and effectuate the intention of the parties, especially the grantor(s), as it may appear or be implied from the instrument itself. *See American Holidays, Inc. v. Foxtail Owners Ass'n,* 821 P.2d 577, 579 (Wyo.1991); *Bowers Welding & Hotshot, Inc. v. Bromley,* 699 P.2d 299, 303 (Wyo.1985); *Kindler,* at 270–71. Intention of the parties is to be determined from the entire context of the instrument, and not from a single clause. *American Holidays,* at 579; *Bowers Welding & Hotshot,* at 303; *Kindler,* at 270–71. Where the language imposing the restriction(s) is clear and unambiguous, we construe it according to its plain and ordinary meaning without reference to attendant facts and circumstances or extrinsic evidence, and the rule of strict construc-

tion does not apply. *McHuron,* at 41; *American Holidays,* at 579; *Kincheloe v. Milatzo,* 678 P.2d 855, 859 (Wyo.1984); *Kindler,* at 271.

### I. Standing to bring suit

■ Contending that Bommer lacks standing to bring this action, Anderson asserts that § 12 of the restrictive covenants requires that an action can be brought only by the original declarant of the restrictive covenants or by a majority of the current subdivision owners:

> **SECTION 12.** That any violation of the covenants, conditions and restrictions contained herein may be enjoined in a court of laws [sic] or equity by the undersigned [the original declarant] or by a majority of the owners of said property, and any person violating said covenants, conditions and restrictions shall be liable for damages to the remaining owners.

Section 12, however, is just one section out of many contained within the restrictive covenants. Pursuant to our standard of interpreting covenants as a whole, we must look also to other significant clauses found therein. Such significant and key clauses are found in the recitals to the restrictive covenants, which state:

> WHEREAS, The undersigned hereby certify and declare that they do hereby establish the following restrictions and covenants expressly for the beneficial development and improvement of said property; and
>
> WHEREAS, The power to enforce the following restrictions and covenants is to reside in the undersigned and all future owners of record of said property;
>
> NOW THEREFORE, The undersigned hereby declare that the property described and referred to above is and shall be held and conveyed upon and subject to the conditions, covenants, restrictions, reservations and charges hereinafter set forth, which are designed for the mutual benefits of the owners of said lots and shall inure to and pass with each and every lot therein, and which shall apply to and bind the Grantor and the Grantee, their heirs, executors, administrators, and assigns[.]

These recitals are contained at the beginning of the restrictive covenants and are, hence, an expression of the intent and purpose for which the covenants were formulated.

■ In resolving Anderson's contention that a majority of the owners must join in the suit, we are guided by our rule that contract provisions which apparently conflict must be reconciled if such can be done by any reasonable interpretation. *Morris v. Kadrmas,* 812 P.2d 549, 553 (Wyo.1991). As a general rule, a restrictive covenant may be enforced by one whose benefit it was made. 21 C.J.S. *Covenants* § 34 (1990). Here the recitals state that the covenants are for the beneficial development of the land, are for the mutual benefit of the owners and all future record owners, and that the power to enforce such covenants resides in all record owners. We conclude, therefore, that the recitals clearly and unambiguously grant the power to enforce the covenants in each and every record property owner. *See Morris,* at 553 (introductory language to covenants recited that the covenants were for the benefit of each and every lot and the owner or owners thereof, and an owner had the right to enforce the covenants and the legal right to correct any violation).

### II. Single-family residence restriction

■ The covenant allowing only single-family dwellings provides:

> **SECTION 1.** *(a)* West ½ Lot 11 to thirty seven (37) both numbers inclusive shall be used for single family residence purposes only and that no building or structures other than one family private residence with the customary out buildings (including private garage) shall be erected, maintained or permitted on a building site.

Anderson argues that he has not violated this covenant because his residence is nothing more than a single-family dwelling which contains guest quarters. Claiming the term "single-family" is ambiguous, Anderson claims he is not a resident of the dwelling, but rather is a guest who infrequently stays at the residence.

■ We find the language "shall be used for single family residence purposes only and

that no building or structures other than one family private residence * * * shall be erected, maintained or permitted on a building site" is clear and unambiguous. The plain and ordinary meaning of "single family residence" is a residence constructed for the purpose of serving as a dwelling place for *one family* in a single living unit; a residence constructed and being used for the purpose of serving as the dwelling place of two separate families or two separate living units is outside of this meaning. *See Knadler v. Adams,* 661 P.2d 1052, 1053–54 (Wyo. 1983); *accord Dice v. Central Natrona County Improvement & Serv. Dist.,* 684 P.2d 815, 818 (Wyo.1984). It is undisputed that Anderson leases the residence to tenants, excluding the "motel room" and the separate furnished basement living unit. Thus, the tenants do not and cannot have exclusive enjoyment and use of the entire residence as one, single-family living unit. It is undisputed that Anderson has resided in the "motel room" at different times, and that the separate furnished basement unit was used by his son and a friend. Such multi-family use is in clear violation of the covenants.

Anderson additionally asserts that his use is permitted because the Jackson building inspector issued to him a building permit, inspected the construction and approved the residence pursuant to the Jackson ordinances. We cannot countenance this contention. As we stated in *Fox v. Miner,* 467 P.2d 595, 597 (Wyo.1970), it is well settled that zoning ordinances cannot override, annul, abrogate, or relieve land from building restrictions or covenants placed upon them. Lacking any evidence that the restrictive covenants are invalid, illegal or contrary to public policy, we follow precedent in holding that the Jackson ordinances cannot relieve Anderson of his obligation to uphold the restrictive covenants.

### CONCLUSION

We hold that Bommer had standing to bring this action; the restrictive covenants are for the mutual benefit of each and every lot owner in the subdivision and may be enforced by an owner thereof. Anderson violated the clear and unambiguous restriction against use of the residence as anything other than a single-family dwelling.

Affirmed.