Randy HUTCHISON, Mary Hutchison, and Jerry Yennie, Appellants (Plaintiffs),

v.

Albert HILL, a/k/a Bud Hill, Karyl Hill and Agents of Bud Hill, namely Bob Arey, Contractor, Appellees (Defendants).

No. 98–350.

Supreme Court of Wyoming.

April 4, 2000.

Representing Appellants: Donald J. Rissler of Central Wyoming Law Associates, P.C., Riverton, Wyoming.

Representing Appellees: Donald J. Keenan of Keenan Law Office, P.C., Riverton, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

GOLDEN, Justice.

Randy and Mary Hutchinson and Jerry Yenne appeal from an order of the district court finding appellees Albert "Bud" and Karyl Hill's intended use of their property is not in violation of the Restrictive Covenants on the Use of Land in Sunburst Estates Subdivision in Riverton, Wyoming, and denying appellants' request for a permanent injunction.

We affirm.

## ISSUES

Appellants present the following issues:

*ISSUE I:* Did the trial court err as a matter of law in holding that appellees' manufactured home did not fall within the definition of "trailer" as defined by the Sunburst Estates Subdivision's restrictive covenants?

*ISSUE II:* Did the trial court err in finding that appellee's manufactured home was not excluded as a metal framed home within the meaning of Sunburst Estates Subdivision's restrictive covenants?

Appellees contend the following:

I. Did the trial court err, as a matter of law, in holding that appellee's manufactured home is not a "trailer" under the covenants of Sunburst Estates Subdivision.

II. Did the trial court err in finding that appellees' manufactured home is not a "metal framed home."

## FACTS

On December 29, 1980, G.L. Heckart, Dorothy A. Heckart, Dennis G. Heckart, Elaine S. Heckart, James R. Schaefer and Karalee H. Schaefer deeded lands to Sunburst, Inc., which were developed as Sunburst Estates, a subdivision located in Riverton, Wyoming. On May 21, 1981, Gerald L. Heckart, Dennis G. Heckart and Karalee H. Schaefer executed "Restrictive Covenants on Use of Land in SUNBURST ESTATES SUBDIVISION." The signatories were, at that time, officers of Sunburst, Inc., although the covenants do not reflect execution in their corporate capacity. Paragraph 3 of the covenants states:

*USE:* All lots herein shall be limited to private residential use and no commercial or business use will be permitted within the subdivision. No lot shall have constructed upon it more than one (1) single residence with appropriate out buildings. No unlicensed or inoperable motor vehicle

shall be stored or parked within the legal subdivision. No trailer house shall be stored or parked within the subdivision other than for the purpose of temporarily maintaining a residence during the construction of a building in conformity with the requirements as hereinafter set forth and not to exceed one (1) year; provided, however unoccupied campers and camp trailers may be stored upon the premises by the beneficial owners of the property. Double wide or any metal framed homes are to be considered trailers and will not be allowed.

Before purchasing a lot in Sunburst Estates, appellees, the Hills, sought to determine whether their manufactured home, which they planned to move in two halves and locate in the subdivision, would violate the subdivision covenants. The Hills intended to remove the axles, wheels and towing devices before permanently installing the home on a concrete foundation engineered to Uniform Building Code (UBC) standards. The frame of the home from the floor to the roof is constructed primarily of wood, although steel beams run the length of the floor. The Hills reviewed the covenants and met with Dennis Heckart, who informed them that he was not qualified to determine whether the Hills' home would violate the covenants. The Hills queried David Young, building official for the city of Riverton, who gave no opinion. Finally, the Hills contacted a banker who reviewed the covenants and agreed to loan the Hills money for purchase of the land. The Hills purchased the property and began construction of a foundation for their home.

A verified petition for declaratory judgment and permanent and temporary injunction was filed by Donald R. Yost and other residents of Sunburst Estates Subdivision, seeking to prohibit the Hills from constructing a concrete foundation for the placement of their manufactured home. The district court issued a temporary restraining order; however, following a hearing on August 26, 1998, the district court denied appellants' petition for temporary injunction, quashed the temporary restraining order, and set the case for trial. The Hills counterclaimed, arguing the restrictive covenants were invalid and unenforceable, lacked an accurate description of the lands subject to the covenants and the signatories had no right, title or interest in the land at the time the covenants were created and filed.

At a bench trial on September 14, 1998, Dennis Heckart testified the covenants were intended to exclude "double-wide trailers," which he described as, "two halves of a house put together." Citing changes in codes and standards over the years, Heckart testified he was not qualified to state whether the Hills' home was prohibited by the covenants.

Licensed real estate appraiser Mike McDonald testified the Hills' home was a double-wide manufactured home. According to McDonald, a double-wide manufactured home comes in two pieces, has a steel frame underneath, with wheels and tongue attached and, depending on the year it was manufactured, displays a Housing and Urban Development (HUD) tag, indicating it was built to HUD code. In contrast, a modular home which is built to UBC standards does not have a steel frame, although it also is transported to site by trailer. Because the floor of the Hills' home is constructed of metal, McDonald considered the home to have a steel frame and stated that removing the wheels, tongue and axles would not change its character. According to McDonald, the term "double-wide" now only refers to manufactured homes.

David Young testified the term "manufactured home" can apply to either a HUD standard home or a UBC factory-built home. Young defined a double-wide as a structure that comes in two halves and agreed that many, if not all, UBC factory-built structures come in two halves. Young considered the house frame to include walls, floor, load-bearing walls, and floor joists, and despite the two steel beams that run the length of the floor, considered the structure of a manufactured HUD home as mainly wood-framed.

Appraiser Robert Tomb testified that "double-wide" was a nebulous term that really did not have a definition and was not used in appraisal terminology, nor did "trailer" in and of itself have any meaning. Tomb considered a manufactured house one that bears

a HUD sticker and defined the frame of a house to include the floor system, roof and exterior support and walls.

On September 23, 1998, the district court determined the Hills' intended use of their property was not a violation of the subdivision covenants and denied the request for permanent injunction. Confining its decision to the interpretation of paragraph 3 of the Sunburst Estates Covenants, the court found, in part, the following:

3. The Court heard credible testimony that the term double wide defined a pre–1976 mobile home. Since 1976, the term double wide has been commonly used to refer to both HUD inspected homes and two piece modular Uniform Building Code homes. Based on that testimony, and the other confusing, circular and contradictory testimony, the term double wide does not have a definite and ascertainable meaning in reference to homes built after the adoption of the HUD code in 1976.

* * *

6. The frame of Defendants' house ... is a combination of metal and wood with more of the frame being made up of wood than metal.

7. Based on the evidence and testimony presented to the Court, Defendants' house is not a trailer house stored or parked within the subdivision as defined by the Sunburst Estates Covenants.

8. Based on the evidence and testimony presented to the Court, Defendants' house is not a metal framed home. The home is a metal and wood framed home, not excluded by the Sunburst Estates Covenants.

Following the district court's order, the parties stipulated to the dismissal of the Hills' counterclaim, and the district court ordered dismissal of defendants' counterclaim and plaintiff's response motion on October 26, 1998. As a result of the parties' stipulation and dismissal by the district court, we do not address the issues in Hills' counterclaim.

## DISCUSSION

*Standard of Review*

■ This Court considers the district court's conclusions of law under de novo re-view. *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996) (citing *Samuel v. Zwerin,* 868 P.2d 265, 266 (Wyo.1994)). However, unless the district court's findings are clearly erroneous or against the great weight of the evidence, we will not disturb them on appeal. *Samuel,* 868 P.2d at 267.

■ We treat restrictive covenants as contractual in nature and interpret them in accordance with the principles of contract law. *McLain v. Anderson,* 933 P.2d 468, 474 (Wyo.1997); *Anderson,* 926 P.2d at 961; *McHuron v. Grand Teton Lodge Co.,* 899 P.2d 38, 40 (Wyo.1995). Most importantly, "[w]e seek to determine and effectuate the intention of the parties, especially the grantor(s), as it may appear or be implied from the instrument itself." *Anderson,* 926 P.2d at 961. We ascertain the true intention of the parties by looking at the writings as a whole, construing them to effectuate the intent of the parties. *Sierra Trading Post, Inc. v. Hinson,* 996 P.2d 1144, 1148 (Wyo. 2000) (citing *Kindler v. Anderson,* 433 P.2d 268, 270–271 (Wyo.1967)); *McHuron,* 899 P.2d at 41.

■ Whether language is ambiguous is a question subject to de novo review by this Court. *Samuel,* 868 P.2d at 266. "Language is ambiguous if it contains a double meaning." *Id.* (citing *McNeiley v. Ayres Jewelry Co.,* 855 P.2d 1242, 1244 (Wyo.1993) (citing *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595, 599 (Wyo.1989))). Restrictive covenant language that is clear and unambiguous is construed according to its plain and ordinary meaning without reference to attendant facts, circumstances or extrinsic evidence. *McLain,* 933 P.2d at 474 (citing *American Holidays, Inc. v. Foxtail Owners Ass'n,* 821 P.2d 577, 579 (Wyo.1991); *Klutznick v. Thulin,* 814 P.2d 1267, 1270 (Wyo.1991); *Knadler v. Adams,* 661 P.2d 1052, 1053 (Wyo.1983)). Restrictions upon the use of land are not favored, will not be extended by implication and, when in doubt, will be construed in favor of the free use of the land. *Kindler,* 433 P.2d at 271.

*Double Wide Trailer*

■ The issue before the district court was whether the Hills' home was a "double

wide" or metal framed home and, therefore, a "trailer" under the restrictive covenants and excluded from the subdivision. Looking first to the drafters' intent, we note Mr. Heckart, an officer of Sunburst, Inc., and signatory of the covenants, refused to opine whether the Hills' manufactured home was permitted under the covenants. Although Mr. Heckart testified the intent of the covenants was to exclude "double-wide trailers," because interpretations, codes and standards had changed over the years, he simply could not say whether the Hills' home was permitted under the covenants. The district court determined that since 1976, the term "double wide" had been used to describe both HUD inspected homes and modular homes constructed to UBC standards. Finding the testimony "confusing, circular and contradictory," the district court ascertained no definite meaning for the term "double wide."

With the intent of the covenants' drafters in question as applied to the Hills' home, we look further to the covenants to ascertain their possible meaning. Paragraph 3 of the covenants discusses "trailer" in reference to a trailer house, which may not be stored or parked, except as a temporary residence not to exceed one year, and notes a camper and camp trailer may be stored, if unoccupied. In these instances, the type of structures referred to, *i.e.* house trailer, camper, and camp trailer, share the common attribute of mobility. Therefore, it would seem that for a double wide to be considered a trailer under the covenants, it would need to be mobile.

Noting that Wyoming statutes do not define "double wide," we seek a definition of "trailer" and find the statutes provide the following:

(xxiii) "Trailer" means a vehicle without propelling power designed to be drawn by a motor vehicle, but excludes converter gear, dollies and connecting mechanisms. The term includes the following vehicles as hereafter defined:

(A) "House trailer" means every trailer which is:

(I) Designed, constructed and equipped as a dwelling place, living abode or sleeping place, either permanently or temporarily;

(II) Equipped for use as a conveyance on streets and highways; and

(III) Eight and one-half (8 1/2) feet or less in width, excluding appurtenances, or more than eight and one-half (8 1/2) feet in width and used primarily as a mobile laboratory or mobile office.

Wyo. Stat. Ann. § 31–1–101(a)(xxiii) (LEXIS 1999).

The Hills' home will not be useable as a conveyance on streets and highways following its attachment to a permanent foundation, and though it exceeds eight and one-half feet in width, it will be used as a residence, not a mobile laboratory or mobile office. The Hills' home does not meet the statutory definition of house trailer.

Recently, a Colorado court considered whether double wide mobile homes and manufactured homes were trailer houses. *Tucker v. Wolfe,* 968 P.2d 179 (Colo.App.1998). The Colorado court determined a trailer house to be a temporary and transient structure, mounted on wheels and axles, capable of being moved, requiring a motor vehicle title if transported and whose main characteristic is mobility. *Id.* at 181. Although a double wide mobile home may be moved from place to place, the court discounted the notion that that alone was sufficient to consider it a temporary structure, finding mobility secondary to the primary function of providing a permanent dwelling. *Id.* at 182. That court stated, "[T]he greater sense of permanency and residential character attributable to double-wide mobile homes and manufactured housing distinguishes them from the commonly understood meaning of trailer houses." *Id.* at 183.

An Ohio court concluded the focus of the determination centered on when the manufactured home should be evaluated and its mobility once installed. *Benner v. Hammond,* 109 Ohio App.3d 822, 673 N.E.2d 205, 208 (1996). Finding the construction of a foundation eliminated the indicia of mobility, that court determined a strange result would occur if the state of the housing were considered before it arrived on the property as opposed to being considered once it is in place. *Benner,* 673 N.E.2d at 208.

We conclude the Hill's home is not a temporary and transient structure whose main characteristic is mobility and, therefore, is not a house trailer stored or parked within the subdivision and prohibited by the restrictive covenants.[1] See A.G. Barnett, Annotation, *Use of Trailer or Similar Structure for Residence Purposes as within Limitation of Restrictive Covenant, Zoning Provision, or Building Regulation,* 96 A.L.R.2d 232, §§ 15 and 16 (1964).

*Metal Framed Home*

The second point at issue regards the frame of the Hills' home. Metal framed homes are considered trailers under the covenants and excluded. Young and Tomb testified the house frame included the floor, walls and roof. Although the floor of the Hills' home contains runners of steel through the length of the floor, it is constructed primarily of wood and cannot be considered a metal framed home for purposes of the covenants.

## CONCLUSION

We hold, as a matter of law, the covenant in question was ambiguous as to whether or not a manufactured home was permissible in the subdivision, and sufficient evidence was provided to support the district court's conclusion that the Hills' home was not a double wide or metal framed home and thus excluded as a trailer under the covenants.

1. We note the following definitions are provided for state sales tax purposes:

(a)(xiii) "Transportable home" means and includes the following as defined:

(A) "Modular home" means a residential dwelling constructed in a factory to a residential construction code other than the Federal Manufactured Home Construction and Safety Standards;

(B) "Prebuilt home" means any residential dwelling that is wholly, or in substantial part, made, fabricated, formed or assembled in manufacturing facilities for installation or assembly on a building site. Prebuilt home shall include, but not be limited to, a manufactured home, modular home and mobile home.

(C) "Manufactured home" means a residential dwelling built in accordance with the Federal Manufactured Home Construction and Safety Standards which is a unit more than eight and one-half (8 1/2) feet in width which is designed, constructed and equipped as a dwelling place or place of business to which wheels may be attached for movement upon streets or highways. Transportable homes are not included within the meanings of trailer houses or trailers.

Wyo. Stat. Ann. § 39–15–101(a)(xiii) (LEXIS 1999). We can also conclude, at least for tax purposes, the Hills' transportable home is not considered a trailer house or trailer.