2004 WY 63

**Burton STEVENS, Appellant (Defendant),**

v.

**ELK RUN HOMEOWNERS' ASSOCIATION, INC., a Wyoming non-profit corporation, Appellee (Plaintiff).**

No. 03–70.

Supreme Court of Wyoming.

June 2, 2004.

Representing Appellant: Christopher S. Leigh, Jackson, Wyoming.

Representing Appellee: Frank Hess and Paul E. D'Amours of Hess & Carlman, LLC, Jackson, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Burton Stevens placed a portable hot tub on the exterior deck of his townhouse without the express consent of the management committee of the Elk Run Homeowners' Association (the Homeowners' Association). The covenants which applied to the townhouse development required approval of the Homeowners' Association for placement of items within the common areas. The Homeowners' Association filed suit against Mr. Stevens seeking to have the hot tub removed. The district court ruled, as a matter of law, that the restrictive covenants encumbering Mr. Stevens' property prohibited him from placing a portable hot tub on his deck without the Homeowners' Association's approval and ordered him to remove it. We agree that the restrictive covenants required Mr. Stevens to obtain consent from the Homeowners' Association's management committee prior to placing the hot tub on his deck. Consequently, we affirm.

## ISSUES

[¶ 2] Mr. Stevens articulates three issues on appeal:

1. When the Covenants, Conditions, and Restrictions of Elk Run Townhouses (Elk Run CCR's) require Management Committee approval before owners may store anything in "common areas" except "in a facility specifically designated or approved for their storage," was the District Court correct in holding as a matter of law that "common areas" included decks which were designated as "Limited Common Area, Deck" on the recorded Elk Run plat[?]

2. When the Covenants, Conditions, and Restrictions of Elk Run Townhouses (Elk Run CCR's) require Management Committee approval before owners may store anything in "common areas" except "in a facility specifically designed or approved for their storage," was the District Court correct in holding as a matter of law that a hot tub did not qualify under the exception for facilities specifically designated or approved for storage[?]

3. Whether the district court correctly interpreted the Elk Run CCR's as requiring Management Committee approval before placing a portable hot tub on the deck of appellant Burton Steven's townhouse, when the CCR's require Management Committee approval of any "exterior addition to or change or alteration, or improvement" upon the property. Is a portable hot tub an[ ] addition, change, alteration, or improvement within the meaning of the CCR's[?]

[¶ 3] The Homeowners' Association phrases the issues on appeal as follows:

I. Was the District Court correct to rule as a matter of law that limited common area is part of the common area and subject to the restrictive covenant that prohibits owners from placing or storing anything within the common areas without the written approval of the Management Committee?

II. Was the District Court correct to rule as a matter of law that by placing a hot tub on his limited common area deck without the prior written consent of the Management Committee, appellant was in violation of the restrictive covenant that prohibits owners from placing or storing anything within the common areas without the prior written consent of the Management Committee or its designee except in a facility specifically designated or approved for their storage?

III. Was the District Court correct to rule as a matter of law that by placing a hot tub on his deck without prior written approval from the Management Committee, appellant altered his deck in violation of the restrictive covenants?

IV. Can the District Court's grant of summary judgment be affirmed under any other proper legal theory?

## FACTS

[¶ 4] In 1993, a developer filed a Declaration of Covenants, Conditions and Restrictions (the covenants) and a plat for the Elk Run Townhouses development in Jackson. The covenants indicated each townhouse was located on a separate lot, allowing for fee simple ownership of each townhouse by an individual owner. The covenants also established the Homeowners' Association and provided that the individual lot owners were members of it. The members were to elect a management committee to govern the affairs of the association.

[¶ 5] The covenants defined "common areas" as areas "designated as such on the applicable plat(s) for the project." The plat identified decks, entryways, and parking areas as "limited common areas." Other applicable provisions of the covenants stated:

12. *Certain Additional Restrictions.* The following additional restrictions are applicable to the lots and common areas. Each reference to "owners" includes their tenants and invitees.

a. *Keeping Outside Areas Clean and Sightly.* The Owners shall not place or store anything within the common areas without the prior written consent of the Management Committee or its designee except in a facility specifically designated or approved for their storage. All owners shall keep their residences and their lots in a reasonably clean, safe, sightly and tidy condition. No clotheslines will be permitted. Any tires, lawnmower, garden equipment, children['s] toys and other similar items must be stored and appropriately screened from the public view when not in use. No antennas or television "dishes" or other items may be placed in public view or upon any of the common areas or lots without the express written consent of the Management Committee. Refuse, garbage and trash shall be kept at all times in a covered container, and such covered container shall be screened from view at all times other than a specified regular time period for garbage pickup. The parking of recreational vehicles, boats, trailers and inoperative vehicles is prohibited in parking areas, garages and other common areas. . . .

b. *Obstructing Common Areas.* Owners shall not obstruct common areas. Owners shall not place or store anything within the common areas without the prior written consent of the Management Committee or its designee except in a facility specifically designated or approved for such storage....

. . .

g. *Architectural Control.* Except as otherwise expressly provided herein, no building, fence, wall, driveway, excavation or improvement of any kind shall be commenced, erected or maintained upon the property, nor shall any exterior addition to or change or alteration therein be made (including without limitation any closing in of a porch or balcony) by any owner other than Declarant, until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing by the Management Committee, as to harmony of external design and location in relation to surrounding structures and topography, and in relationship to the quality and appearance of the project....

[¶ 6] Mr. Stevens acquired Lot 12 of the Elk Run Townhouses Addition in 1998. His warranty deed stated that the property was subject to "taxes, reservations, covenants, encroachments, conditions, restrictions, rights-of-way and easements of sight and/or record." After moving into his townhouse, Mr. Stevens placed a portable hot tub on his exterior deck. The Homeowners' Association requested that Mr. Stevens remove the hot tub from his deck, but he refused.

[¶ 7] On June 13, 2001, the Homeowners' Association filed a complaint in the district court to enjoin Mr. Stevens from keeping the hot tub on his deck. After filing the complaint, the Homeowners' Association amended the covenants to specifically prohibit hot tubs on the premises.

[¶ 8] The parties filed opposing motions for summary judgment. The district court held a hearing, and, subsequently, granted summary judgment in favor of the Homeowners' Association. The court articulated alternative bases for its decision. First, the district court determined that Mr. Stevens was required to obtain management committee approval for the hot tub under paragraph 12(g) because the deck was an improvement to the townhouse unit and placing a hot tub on the deck amounted to a "change" or "alteration" to the deck.

[¶ 9] The district court also ruled that paragraphs 12(a) and (b) applied to this case because "limited common areas," including decks, were governed by the provisions pertaining to "common areas." The court concluded that, under paragraphs 12(a) and (b), management committee approval was required before a hot tub could be placed on a deck. Although the Homeowners' Association argued that the amended covenants applied to Mr. Stevens, the district court did not address that issue in its decision. Mr. Stevens filed a timely notice of appeal of the district court's summary judgment order.

## DISCUSSION

[¶ 10] Mr. Stevens argues that the district court erred by granting summary judgment in favor of the Homeowners' Association. He claims that the district court misinterpreted the covenants as requiring management committee approval prior to the placement of a portable hot tub on an exterior deck.

[¶ 11] Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Owsley v. Robinson*, 2003 WY 33, ¶ 7, 65 P.3d 374, ¶ 7 (Wyo.2003). *See also*, W.R.C.P. 56(c). The court considers the record in the perspective most favorable to the party opposing the motion and gives that party the benefit of all the favorable inferences which may be fairly drawn from the record. *Hasvold v. Park County School District No. 6*, 2002 WY 65, ¶ 11, 45 P.3d 635, ¶ 11 (Wyo. 2002); *Anderson v. Solvay Minerals, Inc.*, 3 P.3d 236, 238 (Wyo.2000).

[¶ 12] This case involves the interpretation of restrictive covenants which control the use of land. Restrictive covenants

are contractual in nature and are, therefore, interpreted in accordance with principles of contract law. *Goglio v. Star Valley Ranch Association*, 2002 WY 94, ¶ 23, 48 P.3d 1072, ¶ 23 (Wyo.2002); *Anderson v. Bommer*, 926 P.2d 959, 961 (Wyo.1996). When the contractual language is·clear and unambiguous, the interpretation and construction of contracts is a matter of law for the courts. We review questions of law *de novo* without giving any deference to the district court's determinations. *Hasvold*, ¶ 11.

[¶ 13] As with all contracts, our goal in interpreting restrictive covenants is to determine and effectuate the intentions of the parties, especially the grantor. When the language of the covenants is clear and unambiguous, we look only to the four corners of the instrument itself to determine the parties' intent. *Goglio*, ¶ 26; *Anderson*, 926 P.2d at 961. The intention of the parties is resolved within the context of the entire instrument, rather than from a single clause. *Anderson*, 926 P.2d at 961. "Where the language imposing the restrictions is clear and unambiguous, [we] construe it according to its plain and ordinary meaning without reference to attendant facts and circumstances or extrinsic evidence." *Id.* In general, restrictions upon the use of land are not favored and, accordingly, such restrictions will not be extended by implication. *Hutchison v. Hill*, 3 P.3d 242, 245 (Wyo.2000). Nevertheless, when the parties' intent is clear from the plain language of the covenants, "the rule of strict construction does not apply." *Anderson*, 926 P.2d at 961–62.

[¶ 14] We turn first to Mr. Stevens' argument that the district court erred by determining that paragraph 12(g) (architectural control) applied to the placement of a portable hot tub on his deck. The district court held that, under paragraph 12(g), Mr. Stevens was required to secure management committee approval before placing the hot tub on his deck because the deck was an improvement to the townhouse unit and placement of the hot tub amounted to a change and alteration of the deck.

[¶ 15] We do not agree with the district court's conclusion on this issue. When we read paragraph 12(g) in its entirety and with-in the context of the whole declarations document, we believe that the terms "alteration" and "change" clearly and unambiguously denote a degree of permanence. The declarant included "closing in of a porch or balcony" as an example of the type of alterations or changes which fall within the paragraph 12(g). The paragraph also specifically refers to buildings, fences, walls, and driveways. Each of these examples is a permanent and enduring modification to the premises.

[¶ 16] Although, this Court has not addressed the meaning of "alteration" or "change" as those terms apply to modifications to real property, other states have addressed this issue in the context of leases. The Colorado Supreme Court opined:

> "[T]he terms 'alteration' and 'change' are construed to mean any alteration or change which substitutes or varies one thing from one form or state to another; which changes or substitutes in a substantial particular any part of a building; which materially and substantially changes the basic structures; or which varies the structural quality."

*Cohen v. Power Investment Co.*, 188 Colo. 34, 532 P.2d 731, 732 (1975) *quoting Zelinger v. Plisek*, 162 Colo. 490, 426 P.2d 957 (1967). *See also, Bonan v. Sarni Original Dry Cleaners, Inc.*, 359 Mass. 217, 268 N.E.2d 366 (1971) (holding that tenant did not violate a lease provision which prohibited alterations without landlord consent when it placed a shirt pressing machine in the front of a dry cleaning store without first obtaining consent from the landlord).

[¶ 17] Placing a portable hot tub on a deck does not affect the structure of the deck or townhouse. The hot tub could be moved by simply unplugging it and draining the water. Consequently, a portable hot tub is not the type of permanent alteration or change addressed by the plain language of paragraph 12(g). The district court's decision to the contrary was incorrect.

[¶ 18] The district court also relied on paragraphs 12(a) and (b) of the covenants in concluding that management committee approval was required before the hot tub could be placed on the deck. Paragraphs

12(a) and (b) address keeping outside areas clean, sightly, and free of obstructions. Owners are prohibited from placing or storing "anything within the common areas without the prior written consent of the Management Committee or its designee except in a facility specifically designated or approved for their storage."

[¶ 19] Mr. Stevens claims that paragraphs 12(a) and (b) do not apply because his deck is designated on the plat as a "limited common area" rather than a "common area." In addition, he argues that, even if the provision does apply to his deck, the hot tub falls within the exception allowing facilities specifically designated or approved for storage because it is used to store water. The plat indicates that decks, entryways, and parking areas are "limited common areas." The plain and ordinary meaning of the term "limited common area" is an area reserved for an owner's exclusive use, but subject to observation by others and, consequently, regulation by a homeowner's association. *See e.g., Dunlap v. Bavarian Village Condominium Association, Inc.*, 780 P.2d 1012, 1013 (Ak.1989). Clearly, the grantor intended to include limited common areas like decks, entryways and parking areas within the regulation of paragraph 12(a) and (b). The obvious purpose of the provisions is to keep any areas that could be observed by the general public and other townhouse owners neat, orderly, and free of obstacles. It would make no sense to direct that tires, lawn mowers, garden equipment, and children's toys be properly stored and screened from public view if the provision did not apply to areas such as decks, entryways and parking areas. Therefore, we hold that paragraphs 12(a) and (b) apply to decks.

[¶ 20] Under those provisions, management committee approval was required before anything except "facilities specifically designated or approved for storage" could be placed on a deck. Mr. Stevens argues that his hot tub fell within the "storage" exception because it was used to store water. Such an interpretation unduly tor-

tures the language of paragraphs 12(a) and .(b). As correctly recognized by the district court, a hot tub's primary purpose is for bathing. The storage of water is incidental to the hot tub's main purpose. Mr. Stevens' interpretation of the "storage" exception would stretch the meaning of that provision well beyond the grantor's obvious intent. The district court correctly gave effect to the intent of the restrictive covenants by ruling that Mr. Stevens was required to obtain management committee approval before he placed a hot tub on his deck.

[¶ 21] Finally, the Homeowners' Association argues that the district court's decision may be affirmed on the basis that the amendment to the covenants that expressly prohibits hot tubs applied to Mr. Stevens. Our ruling that paragraphs 12(a) and (b) mandated Mr. Stevens to obtain management committee approval before the hot tub could be placed on his deck is dispositive. We do not, therefore, need to delve into the issue pertaining to the validity and applicability of the amendments to the restrictive covenants.

[¶ 22] Affirmed.

GOLDEN, J., dissenting.

[¶ 23] I am more persuaded by Mr. Stevens' argument. Being true to the principle that we strictly read restrictive covenants and do not extend them by implication, I do not see "limited common area" to be a subset of "common area." The two areas are separate and distinct. Truth be told, the Homeowners Association's CCR's simply failed to cover the limited common area and, thus, the hot tub situation. The Association took the correct action by later amending the CCR's, but that issue is not before us.