2009 WY 26

**VARGAS LIMITED PARTNERSHIP, a defunct Wyoming limited partnership; and Kit Martin, individually, Appellants (Defendants),**

v.

**FOUR "H" RANCHES ARCHITEC-TURAL CONTROL COMMIT-TEE, Appellee (Plaintiff).**

No.  S–07–0022.

Supreme Court of Wyoming.

Feb. 25, 2009.

Representing Appellant: Michael H. Reese, Attorney at Law, Cheyenne, Wyo-

ming; Ronald L. Brown, Attorney at Law, Fort Collins, Colorado. Argument by Mr. Reese.

Representing Appellee: John B. Rogers of Rogers and Rogers, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Four "H" Ranches Architectural Control Committee (ACC) brought suit on behalf of adjoining landowners in a residential subdivision located in Laramie County, Wyoming, to enforce the subdivision's declaration of protective covenants and enjoin the construction or improvements of several buildings by Vargas Limited Partnership, a defunct Wyoming Limited Partnership, and Kit Martin, individually (hereinafter referred to collectively as Martin), on their property in the subdivision. After the district court denied Martin's motion to dismiss, which asserted that the ACC was not the real party in interest, the district court conducted a bench trial and entered an order upholding the enforcement of the subdivision's declaration of protective covenants, permanently enjoining Martin's construction of any buildings or improvements not consistent with plans and specifications submitted to and approved by the ACC, and requiring the removal of the incompletely constructed buildings designated as Building A prime, Building A double prime, and Building B from Martin's property. Martin appeals the district court's order. We affirm.

## ISSUES

[¶ 2] Martin presents, and ACC accepts, this statement of the issues:

I. Whether the District Court erred when it ruled that [ACC] has standing/real party in interest in this case.

II. Whether the District Court erred in its conclusion of law that construction of Buildings A and A Double Prime was substantially incomplete.[1]

III. Whether the District Court abused its discretion when it entered its order for [Martin] to remove the buildings in question.

## FACTS

[¶ 3] Four "H" Ranches Subdivision comprises eight parcels of approximately forty acres each in Laramie County, Wyoming. Hettich Enterprises, Inc., a Wyoming corporation (Hettich), the owner of all eight parcels in the subdivision, filed of record in 1996 a Declaration of Protective Covenants to which all eight parcels and their subsequent owners were subject. Of the protective covenants, those most pertinent to this appeal are:

1. Parcels shall consist of forty acres more or less and not more than one single family residence shall be constructed on each parcel.

\* \* \* \*

8. No building shall be erected ... on any lot until the construction plans and specifications and a plan showing the location of the structure has been approved by the architectural control committee as to quality of workmanship and materials, harmony of external design with existing structures, and as to location with respect to topography and finish grade elevation.... Any structure must be closed in and exterior finished within one (1) year from date of start of construction.

9. The architectural control committee shall be composed of two officers of Hettich Enterprises, Inc., and one owner of record of a parcel in Four "H" Ranches.... When all parcels are sold two members will be selected by owners of record and one will be a representative of Hettich Enterprises, Inc. who shall thereafter serve as the members of the committee....

10. The committee's approval or disapproval as required in these covenants shall be in writing. In the event the committee

---

1. Martin mistakenly designates Building A. In truth he contends that Building B and Building A double prime were complete.

or its designated representative fails to approve or disapprove within thirty (30) days, after plans and specifications have been submitted to it, or in any event if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deem [sic] to have been fully complied with.

11. The principal dwelling shall have a minimum fully enclosed ground floor area devoted to living purposes, exclusive of porches, terraces and garage[,] of one thousand (1000) square feet, except that where the said principal dwelling is a one and one-half (1½) or two (2) story dwelling the minimum may be reduced to six hundred fifty (650') square feet of ground floor area, providing that the total living area of the one and one-half (1½) or two (2) floors is not less than twelve hundred (1200') square feet.

* * * *

16. No noxious or offensive activity shall be carried on upon any parcel, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood.

* * * *

19. Enforcement shall be by proceeding at law or in equity, against any person or persons violating or attempting to violate any covenant, either to restrain violation or recover damages.

20. Home owners association: At such time as seventy-five percent (75%) of the total parcels are sold or under contract, a meeting of all owners shall be called and an association formed[.] From that time forward the association shall be responsible for the maintenance and operation of all common recreational facilities, enforcement of covenants and such other duties as normally are in the scope of such associations.

* * * *

22. This Declaration of Protective Covenants shall be construed to be part of the conveyance of any of the premises herein described which may be hereafter executed by any of the parties hereto or any of their grantees, heirs, executors, successors or assigns without being mentioned therein.

23. Term of Covenants: Shall run with land twenty (20) years and extend automatically.... A plat is attached hereto, marked Exhibit "A", covering the above described real property.

[¶ 4] Hettich eventually sold each parcel in the subdivision so that each parcel is now under private ownership. In 1998, Hettich sold Parcel 3 to Vargas Limited Partnership, which is now a defunct entity; Kit Martin is the sole responsible party for that defunct entity.

[¶ 5] Hettich provided Martin a copy of the protective covenants, and Martin reviewed them, before purchasing Parcel 3. Martin did not submit construction plans and specifications and a plan showing the location of structures to Hettich when purchasing Parcel 3. Martin has never submitted construction plans and specifications and a plan showing the location of structures to the ACC for approval. Martin has not obtained written approval from the ACC of any construction plans and specifications and a plan showing the location of structures on Parcel 3.

[¶ 6] In 2000, Martin constructed three buildings on Parcel 3, namely, a main shop designated Building A, a catch-all storage building designated Building C, and a garage for a house designated Building D. Martin has not constructed a residential dwelling on Parcel 3 because it is "very hard to find a contractor." In 2005, Martin began construction of a clean shop structure designated Building A prime. At the time the ACC filed suit in late August 2006, the work remaining to be done on Building A prime included insulation, a row of skylights to fill the opening along the roofline, and some trim around one of the ends of the building. In early September 2006, after the ACC filed suit, Martin began construction on a structure designated as Building A double prime, which is to be an east wing of the main shop designated as Building A. That building is "just, basically, a wood frame;" it lacks a ceiling, windows, and doors, and is "still in a state of construction." In the middle of August 2006, a few weeks before the ACC filed

suit, Martin started construction of a structure designated as Building B which is to be a barn for the storage of hay and livestock. Work remaining to be done on that building includes sheet metal on the roof, overhead doors, and trim. The structures designated as Building A prime, Building A double prime, and Building B are of pole construction.

[¶ 7] On August 30, 2006, the ACC filed suit against Martin to enforce the Declaration of Protective Covenants, enjoin the construction of the several buildings on Parcel 3, and to remove any existing structure not in compliance with the protective covenants. Martin timely filed an answer, generally denying breach of the protective covenants. On October 24, 2006, Martin filed a motion to dismiss the suit on the grounds that the ACC was not the real party in interest to bring the suit as required by W.R.C.P. 17(a). On October 31, 2006, the ACC filed its resistance to the motion to dismiss. On November 13, 2006, just before the start of the bench trial, the district court heard argument on, and then denied, the motion to dismiss. Following the two-day trial, the parties submitted proposed findings of fact and conclusions of law. On December 5, 2006, the district court filed its order containing findings of fact and conclusions of law in which it enjoined Martin from constructing any improvement on Parcel 3 not consistent with plans and specifications submitted to the ACC for approval as provided in the protective covenants and previously approved in writing and in which it ordered the removal of Building A prime, Building A double prime, and Building B from Parcel 3. Martin timely appealed.

## DISCUSSION

### 1. Standards of Review

[¶ 8] In regard to Martin's first issue, he argues that the district court erred as a matter of law when it ruled that, in light of the language of the pertinent protective covenants, the ACC was the real party in interest to bring this enforcement action. In reviewing the district court's ruling, we are required to consider the language of the pertinent protective covenants and W.R.C.P. 17(a), which states that "[e]very action shall

be prosecuted in the name of the real party in interest." Because the first issue presents questions of law, we review them *de novo* without giving any deference to the district court's determinations. *Stevens v. Elk Run Homeowners' Ass'n, Inc.*, 2004 WY 63, ¶ 12, 90 P.3d 1162, 1166 (Wyo.2004).

[¶ 9] In regard to Martin's second issue, he argues that the district court erred when it ruled that construction of Building A double prime and Building B was incomplete. He argues that the district court's legal conclusion was erroneous and, therefore, this Court's review of that legal conclusion is *de novo*. We disagree; the district court's legal conclusion rests on the findings of fact that support it. In truth, Martin is challenging those findings of fact. We shall review this second issue applying our standard for reviewing decisions made by a district court following a bench trial:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004) quoting, *Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003). *See also Powder River Ranch, Inc. v. Michelena*, 2005 WY 1, ¶ 8, 103 P.3d 876, 879–80 (Wyo.2005). Further, with regard to the trial court's findings of fact,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for

the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Harber,* ¶ 7, 97 P.3d at 60. The district court's conclusions of law are, however, subject to our *de novo* standard of review. *Powder River Ranch,* ¶ 8, 103 P.3d at 879–80; *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶ 6, 78 P.3d 679, 680–81 (Wyo.2003).

*Mullinnix, LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

[¶ 10] In regard to Martin's third issue, he argues that the district court abused its discretion when it ordered him to remove Building A prime, Building A double prime, and Building B. Our standard of review is:

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present "when a material factor deserving significant weight is ignored."

*Pahl v. Pahl,* 2004 WY 40, ¶ 6, 87 P.3d 1250, 1252 (Wyo.2004). "We have additionally explained that 'judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.'" *Id.* at 1253 (quoting *Ekberg v. Sharp,* 2003 WY 123, ¶ 9, 76 P.3d 1250, 1253 (Wyo.2003)).

*Witowski v. Roosevelt,* 2009 WY 5, ¶ 13, 199 P.3d 1072, 1076 (Wyo.2009) (quoting *Bingham v. Bingham,* 2007 WY 145, ¶ 10, 167 P.3d 14, 17 (Wyo.2007)).

### 2. *Real Party In Interest*

[¶ 11] In addressing the real party in interest issue, both parties preface their arguments by correctly noting our method of interpretation of protective covenants which control the use of land:

Restrictive covenants are contractual in nature and are, therefore, interpreted in accordance with principles of contract law. *Goglio v. Star Valley Ranch Association,* 2002 WY 94, ¶ 23, 48 P.3d 1072, ¶ 23 (Wyo. 2002); *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996). When the contractual language is clear and unambiguous, the interpretation and construction of contracts is a matter of law for the courts. We review questions of law *de novo* without giving any deference to the district court's determinations. *Hasvold [v. Park Cty. Sch. Dist. No. 6,* 2002 WY 65], ¶ 11[, 45 P.3d 635, 637–38 (Wyo.2002) ].

As with all contracts, our goal in interpreting restrictive covenants is to determine and effectuate the intentions of the parties, especially the grantor. When the language of the covenants is clear and unambiguous, we look only to the four corners of the instrument itself to determine the parties' intent. *Goglio,* ¶ 26; *Anderson,* 926 P.2d at 961. The intention of the parties is resolved within the context of the entire instrument, rather than from a single clause. *Anderson,* 926 P.2d at 961. "Where the language imposing the restrictions is clear and unambiguous, we construe it according to its plain and ordinary meaning without reference to attendant facts and circumstances or extrinsic evidence." *Id.* In general, restrictions upon the use of land are not favored and, accordingly, such restrictions will not be extended by implication. *Hutchison v. Hill,* 3 P.3d 242, 245 (Wyo.2000). Nevertheless, when the parties' intent is clear from the plain language of the covenants, "the rule of strict construction does not apply." Anderson, 926 P.2d at 961–62.

*Stevens,* ¶¶ 12–13, 90 P.3d at 1165–66.

[¶ 12] They also correctly note some of our observations about the real party in interest requirement contained in W.R.C.P. 17(a):

The real party in interest has been described as one who has an actual and substantial interest in the subject matter, as distinguished from one who has only a nominal interest, having reference not merely to the name in which the action was brought, but to the facts as they appear of record. Furthermore, that party must be the present owner of the right sought to be enforced and must be the party who would be benefited or injured by the judgment or the party entitled to the avails of the suit. "Interest", within the meaning of this rule, means material interest, an interest in issue and to be affected by the decree, as distinguished from mere interest in the question involved, or mere incidental interest.

*Mari v. Rawlins National Bank of Rawlins,* 794 P.2d 85, 88 (Wyo.1990) (internal citations and quotation marks omitted). The requirement protects a "defendant from the vexation of a multiplicity of actions, with the possible burden of multiple recoveries, all emanating from the same cause." *Id.*

a. Martin's Contentions

[¶ 13] Martin contends that the enforcement action, authorized by Covenant # 19, is expressly granted only to the subdivision's homeowners association in Covenant # 20. He points out that the three covenants which mention the ACC, Covenants # 8—# 10, say nothing about the ACC having the enforcement responsibility. Because the covenants expressly grant the enforcement responsibility to a homeowners association and are silent as to a grant of enforcement responsibility to the ACC, or to any parcel owner of record of the subdivision for that matter, the inescapable conclusion, he argues, is that neither the ACC nor any neighbor in the subdivision is the real party in interest to maintain this enforcement action.

b. The ACC's Contentions

[¶ 14] The ACC contends that it brings this enforcement action because it goes to the very heart of what Covenants # 8—# 10 charge it to do, namely, review construction plans and specifications and location plans and to either approve or reject them based upon quality of workmanship and terms of

harmony of external design with existing structures and with respect to topography and finished-grade elevation. The ACC argues that we must read the covenants as a whole, not just a few isolated paragraphs, to determine whether the ACC has an actual and substantial interest in the enforcement responsibility, rather than a mere nominal interest. The ACC also calls our attention to *McLain v. Anderson,* 933 P.2d 468 (Wyo. 1997), in which several neighbors in a rural subdivision sued to enjoin alleged violations of certain protective covenants governing their subdivision. The protective covenants established, and granted the sole and exclusive right and authority to enforce covenant compliance to, an architectural control committee. We noted that the district court had recognized the neighbors' standing to bring the enforcement action. *Id.* at 471. We did not raise the jurisdiction issue because the neighbors, rather than the architectural control committee, brought the enforcement action.

c. Our Analysis

[¶ 15] All the language in the protective covenants is helpful in capturing the intention of the subdivision developer Hettich with respect to the enforcement responsibility. It is the clear tenor of the covenant language that the developer imposed restrictions upon the use of the parcels pursuant to a general plan of development for the benefit of every subsequent owner of a parcel. Covenant # 19, which expressly authorizes enforcement litigation, does not limit that authority to a particular entity. Covenant # 20, while granting to a homeowners association an enforcement responsibility, does not state that the association has "sole exclusive" enforcement responsibility. We acknowledge that the parcel owners have never formed a homeowners association. Our research reveals that many courts have held that "where lots in a subdivision are sold subject to common restrictive covenants such as to indicate a general plan or scheme, an express reservation of a right of enforcing such covenants does not conclusively negative an intent that such covenants were also for the benefit of and enforceable by other owners to whom

such right of enforcement was not expressly granted." *Calvary Temple v. Taylor*, 288 S.W.2d 868, 873 (Tex.App.1956). Our *McLain* decision accepts this position *sub silentio*. *See also Southwest Petroleum Co. v. Logan*, 180 Okla. 477, 71 P.2d 759 (1937).

[¶ 16] We have also looked to our precedent to more clearly understand the reason and purpose for which the real party in interest requirement exists. In particular, Justice Blume provides illumination in this passage from *Larsen v. Sjogren*, 67 Wyo. 447, 470–71, 226 P.2d 177, 184–85 (1951):

In *Sturgis v. Baker*, 43 Or. 236, 241, 72 P. 744, 746, the court stated: "The statute requiring that every action shall be prosecuted in the name of the real party in interest * * * was enacted for the benefit of a party defendant, to protect him from being again harassed for the same cause. But if not cut off from any just offset or counterclaim against the demand, and a judgment in behalf of the party suing will fully protect him when discharged, then is his concern at an end." In *Rullman v. Rullman*, 81 Kan. 521, 106 P. 52, 53, the court stated: "The relation between these parties (plaintiff and others) is of little concern to the defendant debtor if he has the opportunity to make all of his defenses, and will be protected by a payment to the one bringing the action." In *Meyers v. Bank of Am. Nat. Trust & Savings Ass'n*, Cal.App., 69 P.2d 868, 869 [ (1937) ]; 11 Cal.2d 92, 77 P.2d 1084 [ (1938) ], the court states: "The law is settled that a defendant has a right to have a cause of action against him prosecuted by the real party in interest (section 367, Code Civ. Proc.), but this right ends when (1) a judgment for or against the nominal plaintiff will protect him from any action upon the same demand by another, and (2) when as against the nominal plaintiff he may assert all defenses and counterclaims available to him, were the claim prosecuted by the real owner (*Giselman v. Starr*, 106 Cal. 651, 657, 40 P. 8; *Mosier v. Suburban Estates, Inc., Ltd.*, 137 Cal.App. 574, 575, 31 P.2d 209, 20 Cal.Jur. 490). In the present case plaintiff was present in court, testified that he had been indemnified in full and had assigned his claim to the United States Guarantee Company, who was also represented in court by its attorneys. Hence defendants were fully protected from any future claim against them by either plaintiff or his assignee and could have urged in the present case any and all defenses which they might have presented, had the suit been brought in the name of the plaintiff's assignee, United States Guarantee Company." See further on this subject 39 Am.Juris. 871, and 47 C.J. 33–34 and numerous cases cited. The situation in the case at bar is not dissimilar to the situation in the California case last cited. Appellants were able to set up all the defenses which they had in the suit that was brought herein. All the parties who could have any possible interest against them in the matter in controversy were in court. They not alone brought the suit—in the name of the plaintiffs, mentioning the partners by name—to support the right of the actual plaintiffs herein, but each of the partners testified in the case, so that if either Arnold Larsen individually, or the new partnership separately, were to claim any right against the appellants by reason of the lease or option herein, they would be fully estopped to do so. Hence appellants were fully protected.

*See also Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis.2d 235, 593 N.W.2d 445, 454 (1999); *Kearns v. Michigan Iron & Coke Co.*, 340 Mich. 577, 66 N.W.2d 230, 232–33 (1954).

[¶ 17] In the instant case, several owners of parcels in the Four "H" Ranch Subdivision testified in support of the ACC's enforcement action. Martin asserted all defenses available to him if the enforcement action were prosecuted by a homeowners association or individual parcel owners. If a homeowners association or one or more parcel owners were in the future to claim an enforcement right against Martin for covenant violations litigated in the instant action, they would be estopped to do so. The judgment in this action protects Martin from any enforcement action upon the same demand by another. Martin's concern about the real party in interest is at an end under these circumstances. The reason and purpose of the real

party in interest requirement have been satisfied in this case.

[¶ 18] For the above and foregoing reasons, we hold that the district court did not err in denying Martin's motion to dismiss.

### 3. Whether Construction of Building A Double Prime and Building B was Incomplete

■ [¶ 19] We have examined all of the properly admissible evidence in this record, giving due regard to the district court's opportunity to assess the credibility of the witnesses and examine the exhibits. We have not reweighed disputed evidence. We have assumed that the evidence of the ACC is true and have given that party every reasonable inference that can fairly and reasonably be drawn from that evidence. We hold that the district court's findings of fact that the construction of Building A prime, Building A double prime, and Building B was incomplete are supported by the record. The district court's ultimate conclusion of law on this issue is correct.

### 4. Abuse of Discretion

[¶ 20] We have carefully reviewed the district court's order for Martin to remove the buildings in question in light of this record and do not find that the district court ignored any material factor deserving significant weight. To the contrary, the court's conclusions were drawn from objective criteria and demonstrate the proper exercise of sound judgment with regard to what is right under the facts and circumstances appearing in this record.

[¶ 21] Finding no error in this record, we affirm the order and judgment of the district court.