2009 WY 122

**Ernest and Martha ANDERSON, Appellants (Petitioners),**

v.

**BOARD OF COUNTY COMMISSIONERS OF TETON COUNTY, Wyoming, Appellee (Respondent),**

and

**Robert and Gisela Baltensperger, Appellees (Intervenors).**

No.  S–08–0102.

Supreme Court of Wyoming.

Oct. 6, 2009.

Representing Appellants: Andrea L. Richard and Jennifer A. Golden, The Richard Law Firm, P.C., Jackson, Wyoming. Argument by Ms. Golden.

Representing Appellee, Board of County Commissioners of Teton County, Wyoming: James L. Radda, Deputy County Attorney, Teton County, Jackson, Wyoming.

Representing Appellees, Robert and Gisela Baltensperger: William R. Fix, William R. Fix, P.C., Jackson, Wyoming.

Before VOIGT, C.J., and HILL, KITE, and BURKE, JJ; WALDRIP, D.J.

WALDRIP, District Judge.

[¶ 1] Appellees/Intervenors, Robert and Gisela Baltensperger ("the Baltenspergers"), applied for and were granted the necessary permits allowing them to construct a barn/equestrian center on their property in Teton County, Wyoming. Appellants, Ernest and Martha Anderson ("the Andersons"), objected to the construction permits and appealed to the Board of County Commissioners of Teton County, Wyoming ("the Board"). After the Board affirmed the grant of the permits, the Andersons petitioned the district court to review the final administrative action. The district court affirmed the Board's decision upholding the grant of the construction permits. The Andersons now appeal the Board's decision to this Court. We will affirm.

## ISSUES

[¶ 2] We re-phrase the issues presented by the Andersons as follows:

1. Whether Teton County's decision to approve the construction permits based on conclusory findings that the 6,750 square foot barn would be incidental, subordinate, and devoted primarily to the use of the property's existing 1,056 square foot residence, and would not change the property character, was arbitrary, capricious, and unsupported by substantial evidence.

2. Whether Teton County's approval of the construction permits violated the Teton County Land Development Regulations because Teton County previously found that the proposed barn/equestrian center would injure the neighborhood and violate private covenants, but refused to consider these factors in its final decision.

The Board and the Baltenspergers raise the additional issue of whether the Andersons properly raised the "conclusory findings" issue before the district court.

## RELEVANT FACTS AND PROCEDURAL HISTORY

[¶ 3] The Andersons and the Baltenspergers own adjacent lots in an area of Teton County known as Red Top Meadows. The Baltenspergers applied for permission to build a barn/equestrian center on their property and the Andersons objected. The Baltenspergers needed three separate attempts to obtain the necessary construction permits because their first two applications failed. Their third attempt, however, succeeded. Consequently, the Baltenspergers received a Building Permit and a Grading and Erosion Control ("GEC") Permit, giving them everything necessary to construct their barn/equestrian center. The Andersons appealed the issuance of these construction permits.

[¶ 4] The Baltenspergers own Lots 4A and 5 in the Country Estates Subdivision of Red Top Meadows. The Andersons own and reside on Lot 4B. The Baltenspergers initially proposed building a 9,300 square-foot barn/equestrian center on Lot 5. This initial proposal required three variances from the Teton County Land Development Regulations ("LDRs"). The Country Estates Subdivision is in the Neighborhood Conservation–Single Family ("NC–SF") zoning district, which would not allow the barn/equestrian center to be the primary use of a lot. Because there were no other buildings on Lot 5 the proposed barn/equestrian center would have constituted the primary use of Lot 5. Therefore, the Teton County Planning Department did not process the Baltenspergers' variance applications and the Baltenspergers withdrew that initial proposal.

[¶ 5] Next, the Baltenspergers proposed a 6,900 square-foot barn/equestrian center on Lot 4A. The Baltenspergers trusted that, because there was already a residential home built upon Lot 4A, the primary use of that lot had already been established and it conformed to the NC–SF zoning requirements. The barn/equestrian center would then be an "accessory use or building." This second proposal required one variance because the proposed equestrian center was only set back

25 feet from the private road easement on the property while the LDRs require at least a 50–feet setback. Thus, the Baltenspergers requested a variance in order to build their barn/equestrian center closer to the private road easement than the LDRs normally allow.

[¶ 6] The LDRs require a variance application to be heard by the Teton County Planning Commission (Planning Commission) and then be considered by the Board for final approval. For a variance to be granted, the Teton County Planning Staff (Planning Staff) must find that the proposed variance satisfies seven standards. The Planning Staff was unable to find that the Baltenspergers' variance request satisfied two of the seven standards, namely that the variance was not injurious to the neighborhood and that it was in harmony with the LDRs. Therefore, the Planning Commission voted unanimously against the Baltenspergers' variance request. Rather than pursuing their requested variance in front of the Board, the Baltenspergers withdrew this second proposal.

[¶ 7] For the Baltenspergers' third proposal, they decreased the size of the barn/equestrian center to 6,750 square feet, thereby eliminating the need for the setback variance or any other variance. On November 27, 2006, a Teton County Associate Planner approved the "Zoning Compliance Verification Checklist," which verified that the proposed barn/equestrian center met all pertinent standards in the LDRs. The associate planner also imposed several conditions of approval, most notably that "no commercial operation including the boarding of horses is permitted in the single-family residential site without appropriate County permits." The associate planner's approval of the "Zoning Compliance Verification Checklist" authorized Teton County to issue the Building Permit to the Baltenspergers. The Teton County Engineering Department also approved the Baltenspergers' GEC Application, which resulted in the issuance of the necessary GEC Permit to the Baltenspergers. Thus, the Baltenspergers possessed all necessary permits to commence construction of their barn/equestrian center.

[¶ 8] The Andersons then appealed the issuance of both the Building Permit and the GEC Permit to the Board. The Board held a contested case hearing on March 6, 2007, and affirmed the issuance of the two permits by written decision dated June 12, 2007. By way of summary, the Board found that the Baltenspergers' third proposal complied with all applicable LDRs and that whether the barn violates private covenants is an issue outside the purview of the LDRs and beyond the influence of the Board.

[¶ 9] The Andersons then sought judicial review of the Board's decision in the district court. The district court affirmed the Board's decision in full and the Andersons appealed to this Court.

## STANDARD OF REVIEW

[¶ 10] When reviewing an administrative agency's final decision on appeal from a district court, we afford no deference to the district court's decision. Instead, we review the agency's decision as if it came directly from the agency. *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007) governs our scope of review and states in pertinent part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 11] We set forth in detail the proper application of these standards for reviewing courts in *Dale*, ¶¶ 20–26, 188 P.3d at 560–62. To summarize, we will not substitute our judgment for that of the agency as long as the agency's decision is reasonable under the circumstances. *Id.*, ¶ 22, 188 P.3d at 561. We will defer to an agency's findings of fact if supported by substantial evidence. *Id.* "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Id.*, ¶ 11, 188 P.3d at 558 (quoting *Newman v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo. 2002)).

[¶ 12] We continue to apply the arbitrary and capricious standard as a "safety net" designed to "catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard." *Id.*, ¶ 23, 188 P.3d at 561 (quoting *Newman*, ¶ 23, 49 P.3d at 172). However, we do not apply the arbitrary and capricious standard to true evidentiary questions. *Id.* As always, we review an agency's conclusions of law *de novo*, affirming only if it is in accordance with the law. *Id.*, ¶ 26, 188 P.3d at 561–62.

## DISCUSSION

[¶ 13] Due to its potentially dispositive nature, we initially consider whether the Andersons adequately raised their first issue regarding "conclusory findings" before the district court.

### 1. *Accessory Residential Structure*

[¶ 14] The Andersons incorporate two contentions in the first issue they present to this Court: 1) a procedural argument—that the Board's finding that the barn/equestrian center was an accessory residential structure because it was incidental, subordinate and devoted primarily to the use of the property's residence was conclusory and not supported by specific findings of fact; and 2) a substantive argument—that the finding that the barn/equestrian center was an accessory residential structure was arbitrary, capricious and not supported by substantial evidence. The Board and the Baltenspergers contend that the Andersons never properly presented the procedural issue regarding the adequacy of the Board's findings to the district court for review. The Andersons assert that they adequately raised the issue below and are not required to argue the issue in the exact same manner in each subsequent proceeding.

[¶ 15] In general, we do not consider claims raised for the first time on appeal. *See Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004). We "take[ ] a dim view of a litigant trying a case on one theory and appealing it on another. . . . Parties are bound by the theories which they advanced below." *WW Enterprises, Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo.1998). We have in the past recognized two exceptions to this rule: when the issue raises a jurisdictional concern or when the issue concerns such a fundamental nature of fairness that it must be considered. *Davis*, ¶ 26, 88 P.3d at 490.

[¶ 16] The Planning Commission approved the issuance of the Building Permit because it found the barn/equestrian center to be an "accessory residential structure." The Board interpreted "accessory residential structure" in accordance with the definition of "accessory building" pursuant to Division 8300 of the LDRs, which states:

**Accessory Use or Building.** Accessory use or building means a separate use or structure which: (a) is incidental, subordinate or secondary to, and devoted primarily to the principal use or structure served and does not change the character of the premises; and (b) is located on the same lot or site as the principal use or

structure served. In no event shall an accessory use be construed to authorize a use not otherwise permitted in the zoning district in which the principal use is located.

The Board, in its *Findings of Fact, Conclusions of Law and Order,* stated that the barn/equestrian center was an accessory building because "it is a separate structure which is incidental, subordinate or secondary to the residence on Lot 4A and devoted primarily to said residence and does not change the character of Lot 4A; and because (2) 'the principal use or structure served' on the Lot 4A is a *residential* structure." (emphasis in original).

[¶ 17] In their Petition for Review of Administrative Action, the Andersons set forth two issues for the district court's review:

1) Whether the Board's decision is arbitrary, capricious, an abuse of discretion and not in accordance with law or supported by substantial evidence, in that it failed to require conditions on the permits that would minimize the adverse effects of the barn's construction on the neighborhood and natural environment and on the general health, safety, and welfare of the county.

2) Whether the Board's decision is arbitrary, capricious, an abuse of discretion and not in accordance with law or supported by substantial evidence, in that it approved the permits after the County had denied a variance request for the same project.

The Andersons' brief in the district court also raised a third issue concerning whether the classification of the barn under the LDRs was proper. They contended that the barn did not qualify as either an "accessory residential unit" or an "accessory residential structure." However, neither the Planning Staff nor the Board ever characterized the barn/equestrian center as an "accessory residential unit," but rather as an "accessory residential structure" or as an "accessory building."

[¶ 18] We first note that the inclusion of the additional issue within the Andersons' district court brief violates W.R.A.P. 12.09(a), which confines the district court's review to the record and "to the issues set forth in the petition and raised before the agency." *Id.* The Andersons did not present the procedural issue of whether the Board's findings were conclusory to the district court in either their petition for review or their brief. Because the issue of the adequacy of the Board's findings was not raised in the district court, we agree with the appellees that we should follow our rule that we do not consider issues raised for the first time on appeal and decline to consider it. *Davis,* ¶ 26, 88 P.3d at 490; *WW Enterprises, Inc.,* 956 P.2d at 356.

[¶ 19] However, in their district court brief, the Andersons did raise the substantive issue of whether the barn/equestrian center was properly classified as an accessory residential structure. As noted above, the rules of appellate procedure limit the district court's review to the record and "to the issues set forth in the petition and raised before the agency." W.R.A.P. 12.09(a) While the issue was not set forth in the Anderson's petition for review, it was raised at the agency level and in their district court brief. Furthermore, it does not appear that the appellees claim that the Andersons waived the substantive issue by failing to raise it below. Although the better practice, obviously, is to clearly state all appellate issues in the petition for review, under the circumstances presented here where the issue was raised before the agency and included in the district court briefs, we will undertake our duty to review the entire record and consider the substantive issue of whether the Board's finding that the barn/equestrian center was an accessory residential structure was supported by the record.

[¶ 20] The Board determined that the barn/equestrian center was an accessory residential structure because it was incidental, subordinate or secondary to the residence on Lot 4A and devoted primarily to the residence and did not change the character of the premises. The Andersons claim the record does not support that finding primarily because the proposed barn/equestrian center will be much larger at 6,750 square feet than the residence which is 1,056 square feet. The Andersons point to no provision of

the LDRs or other authority which states that a barn/equestrian center must be smaller than the residence in order for its use to be considered subordinate to the residential use of the premises. We think it is safe to note that barns are often larger than houses. Also, the record is clear that the residential structure was in place when the Baltenspergers applied for the construction permits. Thus, the nature of the premises had been established as residential. The record, therefore, contains substantial evidence to support the Board's finding that the barn/equestrian center was an accessory residential structure because it was incidental, subordinate or secondary to the residential structure and that the barn/equestrian center would not change the character of the premises.

2. *Whether Approving the Construction Permits Violated the LDRs Because Teton County Refused to Consider Whether the Proposed Barn/Equestrian Center Would Injure the Neighborhood and Violate Private Covenants.*

[¶ 21] Teton County concluded that the LDRs preclude it from considering injury to the surrounding neighborhood when reviewing the permit applications at issue in the Baltenspergers' third proposal. The Andersons contend that this conclusion was clearly erroneous. Specifically, the Andersons argue that Teton County was required to impose restrictions on the Baltenspergers' development to minimize adverse impacts on the neighborhood. The Andersons rely upon Section 5120.N.1 of the LDRs to support their assertion. That section states:

Authority. The Board of County Commissioners, and the Planning Director and County Engineer, when they are assigned authority for final action, *may* impose restrictions and conditions on an approved permit, the approved use, and the property to be developed or used pursuant to such approval, as may be necessary for the development to comply with the standards of these Land Development Regulations, to meet the general purposes, goals, and objectives of the Comprehensive Plan and these Land Development Regulations, and

to minimize the adverse effects on other land in the neighborhood and on the general health, safety, and welfare of the County.

*Id.* (emphasis added).

[¶ 22] We have repeatedly stated that the use of the permissive word "may" authorizes the specified action, but does not require it. *See, e.g., French v. Amax Coal West,* 960 P.2d 1023, 1029 (Wyo.1998); *but cf. LM v. Laramie County Dep't of Family Servs.,* 2007 WY 189, ¶ 5, 171 P.3d 1077, 1080 (Wyo. 2007) (stating that the word "shall" indicates mandatory compliance). Reading the plain language of this LDR, we conclude that Teton County was authorized, but not required, to impose restrictions or conditions upon the Baltenspergers' development.

[¶ 23] The Planning Commission denied the Baltenspergers' variance application in their second proposal because the Planning Staff was unable to conclude that the variance was not injurious to the neighborhood and that it was in harmony with the LDRs. The Andersons assert that Teton County needed to consider this finding at the Baltenspergers' third proposal and, consequently, should have imposed restrictions upon the construction permits that would "mitigate harms to the neighborhood." The Andersons' argument is misplaced, however, because the Baltenspergers' third proposal did not require a variance. Instead, the Baltenspergers' third proposal required only the Building Permit and the GEC Permit. The LDRs do not require the Planning Commission to conclude that the proposed construction is not injurious to the neighborhood when considering a request for a building permit or a GEC permit. The LDRs only require this conclusion when the Planning Commission considers a variance application. The Planning Commission was simply not authorized to impose the standards for issuing a variance permit on a development application that did not seek a variance.

[¶ 24] In sum, Section 5120.N.1 of the LDRs provides authority to Teton County to impose restrictions or conditions upon approved permits, but does not mandate it. Additionally, the LDRs only require Teton

County to assess potential injury to the neighborhood when considering applications for variances, but not when considering applications for building permits or GEC permits. The Baltenspergers' third application for construction permits did not seek a variance; it only required a building permit and a GEC permit. Consequently, we find that the approval of the Building Permit and GEC Permit, without the Andersons' requested restrictions, did not violate the LDRs and was in accordance with the law.

[¶ 25] Finally, the Board determined that consideration of private covenants is not within the scope of the LDRs and that Teton County was correct in not imposing restrictions based upon the alleged violations of private covenants. Restrictive covenants are contractual in nature. *Vargas L.P. v. Four "H" Ranches Architectural Control Comm.*, 2009 WY 26, ¶ 11, 202 P.3d 1045, 1050 (Wyo.2009). Thus, restrictive covenants are only enforceable between the property owners, and potentially a homeowners' association, as parties in interest. *Id.*, ¶ 16–17, 202 P.3d at 1052. No provision in the LDRs requires Teton County or the Board to consider whether a proposed development would violate restrictive covenants. Indeed, neither Teton County nor the Board possesses the authority to demand compliance with private covenants between property owners. We find the refusal to impose restrictions upon the construction permits due to potential violations of private covenants to be in accordance with law.

## CONCLUSION

[¶ 26] We will not consider the Andersons' claim that the approval of the construction permits was based on conclusory findings as that issue was not adequately raised below. After reviewing the record, we find that substantial evidence exists to support the Board's finding that the barn/equestrian center was an accessory residential structure. Additionally, Teton County's approval of the Building Permit and the GEC Permit did not violate the LDRs and was in accordance with law.

[¶ 27] The district court's order is affirmed.