2012 WY 36

**Marjorie E. BEDESSEM, Trustee of the Marjorie E. Bedessem Revocable Trust Agreement UTA Dated November 25, 2008, Appellant (Plaintiff),**

v.

**David P. CUNNINGHAM and Susan M. Cunningham, Appellees (Defendants).**

No. S–11–0127.

Supreme Court of Wyoming.

March 9, 2012.

Representing Appellant: M. Gregory Weisz of Pence and MacMillan LLC, Laramie, Wyoming.

Representing Appellees: Steven F. Freudenthal of Freudenthal & Bonds, P.C., Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]  Marjorie Bedessem (Bedessem), as trustee of her revocable trust, filed a complaint against David and Susan Cunningham (Cunninghams), seeking enforcement of an easement across the Cunningham property to access the Bedessem property. Bedessem claimed an implied access easement or, in the alternative, access pursuant to the restrictive covenants applicable to both properties. The district court found no evidence of an implied easement and that the restrictive covenants authorized only the Architectural Control Committee to sue for enforcement of the covenants. On those grounds it granted Cunninghams' summary judgment motion. We affirm.

***ISSUE***

[¶ 2]  On appeal, Bedessem does not challenge the district court's finding on the implied easement claim and presents only the following issue:

I.  Whether the District Court erred when it ruled that Plaintiff did not have standing

to enforce a restrictive covenant against Defendants.

## FACTS

[¶ 3] In the early 1990s, Red Butte Development Corporation (Red Butte) developed a 600–acre tract of land south of Laramie, Wyoming. The planned development included a two-phase residential subdivision of tracts under thirty-five acres in size. Phase I of the Buttes Subdivision was a 300–acre development that reserved to Red Butte the right to grant use of the subdivision's roads for access from Highway 287 to lands east of the Phase I development.

[¶ 4] In conjunction with its original plan, Red Butte applied for a right-of-way across a Bureau of Land Management (BLM) tract of land east of Phase I of the Buttes Subdivision and between the Phase I area and what was proposed, at the time, to be Phase II of the Buttes Subdivision. Red Butte sought to use this right-of-way as part of a looped connection to the Phase II development. At some point, however, Red Butte abandoned the second phase of its proposed subdivision and instead opted to develop the easternmost lands as "the Large Tracts." The Large Tracts, designated Tracts I through IV, ranged in size from forty to one-hundred acres, and they are numbered from south to north, Tract I being the southernmost tract.

[¶ 5] In December 1993, Red Butte sold Tract II of the Large Tracts to Windy Perkins. The Warranty Deed for Tract II granted an access easement to Tract II from the north across Tracts III and IV. In December 1994, Red Butte sold Tract I to the Cunninghams. The Warranty Deed for Tract I gave the Cunninghams access easements to their property that did not cross Tracts II, III or IV.

[¶ 6] In conjunction with the sale of Tract I to the Cunninghams, Red Butte applied to the BLM to revise the right-of-way across the BLM tract so as to eliminate the loop and terminate the right-of-way across the BLM land at Tract I's western boundary. In March/April 1995, the BLM approved and adopted the requested revision to the right-of-way to terminate Butte Loop as a loop road and to specify that Butte Loop, crossing the BLM tract, would terminate at the Tract I boundary. On April 6, 1995, the BLM right-of-way grant was assigned from Red Butte to the Cunninghams, effectively eliminating the southern portion of the so-call "Loop."

[¶ 7] In 1997–1998, Cunninghams built a home on Tract I, and Windy Perkins, along with her husband, Dr. James R. Smith, built a home on Tract II. During this time, Cunninghams agreed that Perkins and Smith could access Tract II via Butte Loop across Tract I, and Perkins/Smith agreed to share the cost of substantial improvements to the road. Eventually, Cunninghams and Perkins/Smith became close personal friends, and Cunninghams continued to allow them to access Tract II via Butte Loop and across Tract I. That permission continued throughout the time the parties remained in their residences.

[¶ 8] In 2003, the owners of Tracts I through IV decided to amend the restrictive covenants that governed their properties, due to concerns about the absence of recorded covenants on Tract IV and inconsistencies in the recorded covenants for the other tracts. On December 19, 2003, the revised covenants were recorded as *Vacation of Existing Covenants; Conditions and Restrictions and Re–Declaration of Covenants, Conditions and Restrictions* (Covenants).

[¶ 9] In 2007, Perkins listed Tract II for sale. Perkins' realtor, Dianne Van Pelt, visited with Cunninghams to obtain layout maps showing the relative locations of the four Large Tracts. During that meeting, Cunninghams advised Ms. Van Pelt that they would no longer extend permission to access Tract II via Tract I. They indicated that they expected the new owners to access Tract II from the north, along the express easement contained in the Tract II Warranty Deed. Ms. Van Pelt thereafter had a title insurance company investigate access to Tract II and learned that the only insurable access was the access from the north across Tracts III and IV.

[¶ 10] In September 2008, Jack and Marjorie Bedessem purchased Tract II.[1] They purchased the property subject to the original Tract II Warranty Deed, which granted an access easement to Tract II from the north across Tracts III and IV. The Buy Sell Agreement executed by Perkins and the Bedessems acknowledged that access to Tract II was from the north. Before closing on the property, the Bedessems requested a meeting with the Cunninghams to discuss the possibility of access to Tract II through Tract I, but for various reasons, that meeting never occurred.

[¶ 11] After moving into the residence on Tract II, Bedessems accessed their property both from the north, using the easement across Tracts III and IV, and also from the south, across Tract I. Cunninghams informed Bedessems that they did not want Bedessems crossing their property to access Tract II. Eventually, frustrated at Bedessems' continued access from the south, across Cunninghams' property, Cunninghams locked the "Cunningham Ranch Gate" where the BLM right-of-way meets the western boundary of Tract I. Despite initial efforts to resolve their dispute, including Cunninghams' agreement that Bedessems could use the southern route across their property when snow made the northern route impassable and for a January 2009 party, the parties were unable to reach agreement concerning Bedessems' continued access across Cunninghams' property.

[¶ 12] In May 2010, Bedessem filed a complaint against Cunninghams seeking declaratory and injunctive relief as well as damages for past conduct, punitive damages and attorney fees. Bedessem claimed an implied access easement or, in the alternative, access pursuant to the terms of the restrictive covenants applicable to both properties. Cunninghams moved for summary judgment, and the district court granted that motion in its entirety. The court found that the expressly agreed upon access easement for Tract II from the north precluded an implied easement, and it further found that the restrictive covenants authorized only the Architectural Control Committee to sue for enforcement of the covenants and precluded Bedessem's enforcement action. On appeal, Bedessem has abandoned the implied easement claim.

## STANDARD OF REVIEW

■ [¶ 13] This Court has a well-established standard for reviewing a grant of summary judgment:

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 10, 25 P.3d 511, [514–15] (Wyo. 2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense that has been asserted by the parties. *Williams Gas Processing–Wamsutter Co. v. Union Pacific Resources Co.*, 2001 WY 57, ¶ 11, 25 P.3d 1064, [1071] (Wyo.2001).

*Trabing v. Kinko's, Inc.*, 2002 WY 171, ¶ 8, 57 P.3d 1248, 1252 (Wyo.2002).

We review a district court's summary judgment rulings *de novo*, using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).

*Grynberg v. L & R Exploration Venture*, 2011 WY 134, ¶ 16, 261 P.3d 731, 736 (Wyo. 2011). Interpretation of restrictive covenants is a matter of law we review *de novo*. *Vargas Ltd. P'ship v. Four "H" Ranches Architectural Control Comm.*, 2009 WY 26, ¶ 11, 202 P.3d 1045, 1050 (Wyo.2009).

## DISCUSSION

■ [¶ 14] Bedessem seeks to enforce the following provision of the Covenants,

---

1. The Bedessems later transferred Tract II to Marjorie E. Bedessem, Trustee of the Marjorie E. Bedessem Revocable Trust Agreement UTA dated November 25, 2008.

which it contends the Cunninghams have violated by placing a gate across the entrance to their property:

> Gates and/or other entry control devices may be erected to control access to the large parcels or to provide for containment or exclusion of livestock. Such gates and/or control devices shall not unduly interfere with the ingress or egress of other Large Parcel Area property owners, their invitees or their servants where such ingress or egress is guaranteed by established rights of way or customary use.

[¶ 15]   Before the district court, Cunninghams argued that this provision does not and cannot by law provide an easement across their property, and furthermore, the Covenants are not subject to enforcement by individual property owners. The district court agreed that Bedessem could not seek enforcement of the Covenants because the Covenants granted the sole right of enforcement to an architectural committee. It did not address the alternative argument that the Covenants do not provide access across Cunninghams' property. We agree that the threshold issue is whether the Covenants allow an enforcement action by an individual property owner, and we likewise conclude that they do not.

▆▆▆▆ [¶ 16]   Because restrictive covenants are contractual in nature, this Court interprets them in accordance with the principles of contract law. *Vargas,* ¶ 11, 202 P.3d at 1050; *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996). If the plain terms of the covenants are sufficiently clear, we interpret them without reference to any attendant facts and circumstances or extrinsic evidence. *Vargas,* ¶ 11, 202 P.3d at 1050; *Goglio v. Star Valley Ranch Ass'n,* 2002 WY 94, ¶ 23, 48 P.3d 1072, 1081 (Wyo.2002); *McLain v. Anderson,* 933 P.2d 468, 474 (Wyo.1997). We consider the document as a whole and interpret any clause or paragraph in harmony with the other provisions. *Omohundro v. Sullivan,* 2009 WY 38, ¶ 9, 202 P.3d 1077, 1081 (Wyo.2009); *Stevens v. Elk Run Homeowners' Ass'n, Inc.,* 2004 WY 63, ¶ 13, 90 P.3d 1162, 1166 (Wyo.2004).

[¶ 17]   The Covenants that govern the Large Tracts provide for an Architectural Control Committee (ACC) that "shall consist of one Owner of record from each of Tracts I, II, III, and IV; provided that a dwelling unit is constructed upon and occupied by an owner of record upon that parcel." The Covenants require that the ACC approve any new structures or substantial alterations of existing structures, and they authorize the ACC to act on variances as follows:

> The Architectural Control Committee shall have full power and authority to grant variances from these Covenants for cause shown to prevent undue hardship upon the owner. Any variance granted shall not cause violation of the overall theme and appearance of the area affected by these Covenants.

[¶ 18]   Article II, Section A of the Covenants addresses enforcement of its provisions. It specifies:

> The Architectural Control Committee shall have the *sole right,* but not the requirement, to enforce, by any applicable proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereinafter imposed by the provisions of this document. Failure to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.   (Emphasis added.)

We find the language of the Covenants to be clear and unambiguous in its grant of enforcement authority. The Covenants grant the ACC the sole right to enforce the covenants through legal or other action. Not only is this grant of authority clear from the Covenant's plain language, it is consistent with the broad authority of the ACC generally. The ACC has the authority to review and approve all construction on the Large Tracts and to grant variances from the Covenant's requirements. It is clear from the Covenants, that the ACC, rather than any individual landowner, was to have the discretion to interpret, apply and enforce the Covenants. In the absence of a public policy violation, and none having been presented in this case, we will not disturb the clear intentions of the contracting parties. *See Goglio,* ¶ 19, 48 P.3d at 1079.

[¶ 19]  We do not agree with Bedessem that this Court's decisions in *Vargas* or *McLain* change this result.  In *Vargas*, an architectural control committee filed an action against a landowner for alleged violations of the applicable restrictive covenants, and the landowner challenged the authority of the committee to file the action.  *Vargas*, ¶ 7, 202 P.3d at 1049.  The covenants in that case granted enforcement authority to the homeowners' association without making that authority "sole" or "exclusive."  *Id.*, ¶ 15, 202 P.3d at 1051.  We held that the architectural control committee could maintain its action, recognizing that

> "where lots in a subdivision are sold subject to common restrictive covenants such as to indicate a general plan or scheme, an express reservation of a right of enforcing such covenants does not conclusively negative an intent that such covenants were also for the benefit of and enforceable by other owners to whom such right of enforcement was not expressly granted."  *Calvary Temple v. Taylor*, 288 S.W.2d 868, 873 (Tex.App.1956) [ (Tex.Civ.App.1956) ].

*Vargas*, ¶ 15, 202 P.3d at 1051–52.  The instant case is plainly distinguishable in that the Covenants give the ACC the "sole right" to bring any enforcement action.

[¶ 20]  Our decision in *McLain* is also distinguishable.  In *McLain*, individual homeowners brought an enforcement action even though the applicable covenants granted the architectural control committee the "sole and exclusive right and authority to enforce compliance with the covenants."  *McLain*, 933 P.2d at 473.  We affirmed the district court decision granting certain relief to the homeowners, but the question of authority to bring the action in the first place was not raised or addressed.  The issue was only tangentially raised in connection with the district court's rejection of the homeowners' demand for the monetary penalties provided by the covenants.  We affirmed, recognizing that the subdivision, acting through its architectural control committee, had the "sole and exclusive right and authority to enforce compliance with the covenants," and holding that the continuing penalty "was not intended be available to benefit individual owners who sought enforcement of the covenant."  *Id.* at 474.

## CONCLUSION

[¶ 21]  The Covenants applicable to the Large Tracts grant the Architectural Control Committee the sole right to enforce the Covenants, and we thus affirm the district court's summary judgment order.